Argued July 11, affirmed September 10, 1973

CAMPBELL, *Appellant, v.* FORD
INDUSTRIES, INC. ET AL, *Respondents.*

513 P2d 1153

*Charles Robinowitz,* Portland, argued the cause and
filed the briefs for appellant.

*James H. Clarke,* Portland, argued the cause for respondents. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, Portland, and Wayne Hilliard and Richard H. Williams, Portland.

## TONGUE, J.

This is an action for damages alleged to have resulted from the discharge of plaintiff as an employee of defendant Ford Industries, Inc., as a part of an alleged fraudulent scheme by defendants to force plaintiff to sell his stock as a minority stockholder in that corporation. The damages sought by plaintiff's complaint include loss of earnings and retirement benefits as an employee, loss of plaintiff's professional reputation as a mechanical engineer, and punitive damages.

Plaintiff appeals from an adverse judgment following the entry of an order sustaining defendants' demurrer to plaintiff's complaint for failure to allege facts sufficient to constitute a cause of action.[1]

---

[1] Plaintiff's amended complaint alleges, in part, as follows:

"II.

"At all times relevant herein plaintiff was a minority shareholder of defendant Ford Industries.

"III.

"In or about 1964 defendants devised a scheme to acquire the stock of all minority shareholders of defendant Ford Industries which scheme was false, misleading, fraudulent and deceptive and constituted a breach of fiduciary responsibility to plaintiff.

"IV.

"In order to purchase a substantial amount of his stock in Ford Industries plaintiff arranged a loan of $25,000 from the First National Bank of Oregon, the terms of which defendants at all relevant times were aware.

(Continued on page 481)

Plaintiff's primary contentions are:

1. "The Oregon Securities Law [ORS 59.135] does not allow any person, either directly or indirectly, in connection with the purchase or sale of a security, to employ any device or artifice to defraud another, and this device may include the termination of one's employment where it is a part

---

(Continued from page 480)

"V.

"In order to induce plaintiff to dispose of his stock in Ford Industries, defendants committed the following acts which constituted a breach of their fiduciary duty to plaintiff:

"1. In 1964 defendant Kenneth Ford, through his wholly-owned corporation, defendant Roseburg-Lumber Co. [herein Roseburg], acquired over two-thirds (2/3) ownership of the capital stock of Code-A-Phone, Inc., now Ford Industries, Inc. Shortly thereafter, through his control of the Code-A-Phone, Kenneth Ford and Roseburg replaced the then corporate directors of Code-A-Phone, Inc. and reduced the size of the Board of Directors to the present total of three, including himself, and Defendant Allyn C. Ford, his son, with the President of the Company as the third director. At all relevant times, defendant Kenneth Ford has dominated the Board of Directors.

"2. At all relevant times from 1964 to date defendants, as a matter of established policy, have failed and refused to give minority stockholders of Ford Industries, including plaintiff, any financial information, even in response to express requests, have failed to include financial information in proxy statements, and have failed to keep minority stockholders including plaintiff aware of the business prospects and successes of Ford Industries.

"3. From 1964 through 1969 defendant Roseburg acquired the stock of other minority American shareholders at prices ranging up to $9.00 per share.

"4. On or about June 30, 1966, shortly before the end of Ford Industries' fiscal year, which ended July 31, 1966, defendants called a special meeting of the Directors of Ford Industries to approve the issuance to Roseburg of 245,000 shares of stock at a price of $6.00 per share, thus converting to stock at this price a $1,470,000 loan by Roseburg to Ford Industries.

"5. In 1963, before substantial earnings, Ford Industries' stock had been selling for $9.00 per share on the open market.

(Continued on page 482)

of an overall scheme to force another to sell his securities at a depressed price."

2. "Majority stockholders * * * have a fiduciary duty to minority stockholders preventing them from using their control of the corporation to take

(Continued from page 481)

"6. Stockholders' approval of the conversion to $6.00 per share was obtained by deception at a special meeting of shareholders of Ford Industries, also held in June, 1966, just before the fiscal year-end. At this meeting defendants concealed information on growth in sales and substantial profits. No financial information was given to stockholders who were present at that meeting, and no financial information accompanied the proxy statements.

"7. As part of its policy to depress stock prices and conceal profits of Ford Industries, defendants, as controlling Directors, never authorized or declared any dividends at any time from 1964 to date. During that period, total earnings before taxes were over $3,000,000 ($1,290,000 in 1969, and over $1,300,000 in 1971-72). Additions to earned surplus were approximately $2,000,000, and by January, 1972 Ford Industries had net working capital (Excess of current assets over current liabilities) of $2,403,849.

"8. In June, 1969, without stockholder approval, defendants decided to make an acquisition at a cost of $1,500,000. Defendants, as Officers and Directors both of Roseburg and Ford Industries caused Ford Industries to borrow $1,500,000 from Roseburg Lumber Co. and to execute a demand promissory note for $1,500,000 dated June 6, 1969. This action was taken without a Directors' Meeting and without approval by the Board of Directors of Ford Industries or Roseburg, and was without approval of the stockholders of Ford Industries.

"9. In October, 1970, as a further device to depress stock prices and force the remaining shareholders of Ford Industries to sell to Roseburg, defendants, as Directors, at a special meeting of Directors, authorized conversion of the $1,500,000 Roseburg demand note into debentures, convertible into Ford Industries common stock at $5.00 per share, at any time over a ten-year period. This device was designed to freeze company stock for a ten-year period or until the minority was squeezed out at an artificially low price of $5.00 per share, and further was designed to and did effectively destroy the Company stock option plan, under the terms of which key employees had been awarded options convertible at $6.00 per share.

"10. In October, 1970, a Shareholders' Meeting was held

(Continued on page 483)

unfair advantage of a minority stockholder by firing him from his job in order to force him to sell his stock at depressed prices."

3. Plaintiff should not be denied relief because

(Continued from page 482)

seeking approval of this transaction. No financial statements were sent with proxy statements. At the meeting, certain minority shareholders refused to approve the action of Directors, and holders of Roseburg proxies agreed. Defendant Spears, using undue influence upon the other two holders of Roseburg proxies, and after interrupting the meeting for a secret conference, illegally forced a reversal of the stockholder rejection of the convertible debentures.

"11. In March, 1971, Defendants caused the fiscal year of Ford Industries to be changed to March 31, to coincide with the fiscal year of Roseburg Lumber Co. A March 31, 1971 financial statement showing operations for the eight month period between August 1, 1970 and March 31, 1971 reported a loss and was sent to some shareholders. This financial statement also disclosed the $5.00 convertible debenture transaction.

"12. In the summer of 1971 in response to threats of litigation by minority stockholders to force cancellation of the $5.00 per share convertible debentures, defendants agreed and later did cancel the debentures. This information was never disclosed to the shareholders or employees of Ford Industries who continued to believe that their stock was effectively frozen at $5.00 per share for ten years.

"13. In 1971 defendants formed a corporation called 'Ford-Roseburg' for the sole purpose of merging it with Ford Industries thereby forcing the remaining minority shareholders, including plaintiff, to sell their shares at $7.00 per share under Washington law. All of the minority shareholders were notified of the short-form merger, but none were given any financial information, none were advised that the $1,500,000 debenture issue, convertible at $5.00 per share, had been cancelled, and none were advised that under the applicable Washington 'short-form' merger planned by defendants, the minority stockholders had 15 days to request an appraisal of their stock or they would be forced to sell their shares at $7.00 per share.

"14. On or about May 28, 1971 defendants discharged plaintiff from his duties as a mechanical engineer and employee of Ford Industries without prior notice and in order to force him to default on his bank loan described above in paragraph III of this Amended Complaint and thereby dispose of his stock in Ford Industries."

he was damaged as an employee, and not as a stockholder, in defendants' attempt to "squeeze him out" as a stockholder.

Defendants, in turn, contend that plaintiff's complaint does not state a cause of action because:

1. ORS 59.135 has no application because plaintiff's complaint does not allege any injury to plaintiff's investment interest as a stockholder.

2. The only injury allegedly sustained was an injury to plaintiff's interest as an employee and defendant had an absolute right to terminate plaintiff's employment without cause, even for an allegedly improper motive and unaffected by any fiduciary duty owed to plaintiff as a stockholder.

In *Baker v. Commercial Body Builders*, 264 Or 614, 507 P2d 387 (1973), decided after this action was filed and after the trial court sustained defendants' demurrer to plaintiff's amended complaint, this court discussed (at 1028-031) the remedies available to a minority stockholder subjected to "oppressive" conduct in the form of a "squeeze out" attempt by the majority stockholders of a "close corporation." In that decision we pointed out (at 1030-031) that although ORS 57.595 provides that in such a case a circuit court has power to liquidate the assets and business of a corporation, other alternative equitable relief may also be available including "[a]n award of damages to minority stockholders as compensation for any injury sustained by them as a result of 'oppressive' conduct by the majority in control of the corporation," citing our previous decision in *Browning v. C & C Plywood Corp.*, 248 Or 574, 587, 434 P2d 339 (1967).

In *Baker*, under quite different facts, we affirmed the findings of the trial court which denied relief to the plaintiff, a minority stockholder, despite

allegations in plaintiff's complaint that the "oppressive" conduct in that case included discharge of the plaintiff. In so holding we pointed out (at 1032), among other things, that although the plaintiff in that case "* * * could not be properly excluded from 'corporate participation' as a stockholder, it is an entirely different question whether it was 'oppressive' to terminate his salary as an employee * * *." In that case, however, there was testimony that the reason for plaintiff's discharge was "unsatisfactory work performance," rather than as a part of any "oppressive conduct" to coerce him into selling his stock.

Upon examination of plaintiff's amended complaint we believe that it alleges facts which, if proved, constitute "oppressive" conduct within the meaning of ORS 57.595 so as to entitle the minority stockholders of defendant Ford Industries, Inc., including plaintiff, to some relief. The more difficult question is whether such relief would include the protection of plaintiff's employment and the award of damages for termination of such employment, including damages for impairment of plaintiff's interest as an employee, rather than damages for impairment of plaintiff's investment interest as a stockholder.

In seeking to resolve this question we must consider what has normally been recognized to be the unqualified right of an employer to discharge an employee for any reason and regardless of cause or motive, in the absence of limitations on their right imposed by provisions of statute or contract. On the other hand, we must also consider what we have recognized to be the fiduciary duties imposed upon the majority of the stockholders of such a corporation to its minority stockholders, as well as the provisions of ORS 57.595 relating to "oppressive" conduct by those

in control of a corporation and those of ORS 59.135 relating to fraudulent schemes and practices in connection with the purchase of any security.

Defendants have cited *Webster v. Schauble*, 65 Wash 2d 849, 400 P2d 292 (1965), in which the court held (at 294) that a stockholder-employee had no cause of action against the controlling stockholders for the termination of his employment. In that case, plaintiff had purchased his stock with a loan he could not pay when defendants fired him. The court held as follows, under quite different facts:

"* * * There being no contract of employment for a specific period, the employer had the right to discharge Webster at any time with or without cause. * * *
"* * * * *

"We can appreciate the desire of the trial court to mitigate to some extent the effects of this seemingly arbitrary and ruthless act by the Schaubles in closing down this corporation. * * * but as a salaried employee he seems to us to be without a remedy * * *."

We do not agree, however, that a minority stockholder who is also an employee and who is threatened with discharge unless, as a part of an otherwise "oppressive" or "fraudulent" course of conduct, he sells his stock at a price below its actual value is "without a remedy," particularly where, as in this case, it appears that he did not acquire his stock on the open market, but under a company stock option plan which may have related to his contract of employment. We believe, however, that any such remedy does not include an action at law for damages to the interest of the employee, as such.

The damages demanded by the plaintiff in this

case are limited to an award of damages for loss of earnings and retirement benefits as an employee and for damage to his "professional reputation" in the occupation in which he was employed, all of which relate solely to plaintiff's interest as an employee. Such a demand for damages is particularly incongruous where, as in this case, plaintiff seeks to allege a cause of action for violation of the provisions of the Oregon Securities Law relating to the purchase or sale of securities.

For these reasons we hold that the trial court did not err in sustaining defendants' demurrer to plaintiff's amended complaint. Upon the sustaining of defendants' demurrer plaintiff declined to plead further and did not request leave to file an amended complaint. Neither has plaintiff made any such request in this court.

Affirmed.