Argued April 2, affirmed in part; reversed in part June 12, 1975

NEES, *Respondent, v.* HOCKS ET AL, *Appellants.*

536 P2d 512

*Donald H. Greene,* Portland, argued the cause for appellant. With him on the brief were Burrows & Greene, Portland.

*Elden M. Rosenthal,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

DENECKE, J.

The principal question is whether the plaintiff alleged and proved conduct of the defendants which amounts to a tort of some nature.

In this court the defendants sought to have us reexamine the evidence. As we have so often stated, we cannot reweigh the evidence and if there is any evidence to support the verdict of the jury, we must affirm.

The jury found for plaintiff; therefore, we must consider the facts as established by the evidence most favorable to plaintiff. The plaintiff performed clerical duties for defendants. She started work in 1971. In 1972 she was called for jury duty; however, as she informed defendants, she requested and was granted a 12-month postponement because of her honeymoon. On February 2, 1973, plaintiff was again

subpoenaed to serve on the jury. She told defendants and they stated that a month was too long for her "to be gone." Defendants gave her a letter which stated defendants could spare plaintiff "for awhile" but not for a month and asked that she be excused. Plaintiff presented this letter to the court clerk and told the clerk that she had been called before and had to be excused, but she would like to serve on jury duty. The clerk told plaintiff she would not be excused. The plaintiff immediately came back to the office and told defendants that she would have to serve a minimum of two weeks' jury duty. She did not tell defendants she had told the court clerk she really wanted to serve.

Plaintiff started her jury duty on February 26, 1973. On March 1, 1973, she received a termination letter from defendants. The letter stated, in part: "Although we asked you to request an excusal from Jury Duty and wrote a letter confirming the Labls [defendants'] position, it has been brought to our attention you, in fact, requested to be placed on Jury Duty." The letter went on to state the defendants also were not otherwise satisfied with plaintiff's work. Based upon other evidence, however, the jury could have found plaintiff was not terminated because of dissatisfaction with the quality of plaintiff's work.

A representative of the firm that employed plaintiff after she was terminated by defendants testified one of the defendants told him plaintiff was terminated because she went on jury duty.

Plaintiff testified she suffered emotional distress because of her termination. She secured employment commencing one week after she finished jury duty for a higher salary than she had received from defendants. The jury awarded plaintiff compensatory and punitive damages.

■ Plaintiff has labeled the tort she contends she pleaded and proved, "prima facie tort." This is a label used by some courts, particularly New York. Prosser, Torts (4th ed) 953, n 96. We used the term in dictum in *Wampler v. Palmerton,* 250 Or 65, 79-80, 439 P2d 601 (1968), and may have been referring to it in dictum in *Mandal v. Hoffman Const. Co.,* 270 Or 248, 527 P2d 387 (1974). We are of the opinion that the term serves no purpose in Oregon and we will ·advance the jurisprudence of this state by eliminating it.

In the 19th century the common-law forms of pleading became increasingly rigid. "The attitude persisted that unless a plaintiff could bring his action under a particular form, label, or category of tort, he should be remediless." Note, 42 St. Johns L Rev, 530 (1968); Forkosch, *An Analysis of the "Prima Facie Tort" Cause of Action,* 42 Cornell L Q 465-475 (1957). Some English judges and legal scholars sought to escape this rigidity by formulating a very general principle for the basis of liability for intentional acts. This principle would afford a remedy beyond the confines of the existing tort causes of action.

Mr. Justice Holmes was influenced by writings of the English authorities. In *Aikens v. Wisconsin,* 195 US 194, 204, 25 S Ct 3, 49 L Ed 154 (1904), he wrote:

"* * * It has been considered that, prima facie, the intentional infliction of temporal damages is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape. * * *."

The Court held constitutional a statute which punished newspapers, among others, combining to wilfully injure a rival paper.

The New York Court of Appeals stated in *Advance Music Corp. v. American Tobacco Co.,* 296 NY 79, 84, 70 NE2d 401 (1946) :

"This difference over the general principles of liability in tort was composed for us in *Opera on Tour, Inc. v. Weber* (285 N.Y. 348) [34 NE2d 349, 136 ALR 267]. We there adopted from *Aikens v. State of Wisconsin (supra)* the declaration that '*prima facie* the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape.' The above second cause of action alleges such a prima facie tort and, therefore, is sufficient in law on its face. (*American Guild of Musical Artists v. Petrillo,* 286 N.Y. 226, 231) [36 NE 2d 123, 125]."

Thus, "prima facie tort" was formalized and took its place along with tort labels such as malicious prosecution, strict liability in tort, etc. The New York court transformed a broad basis for liability into a specific tort.

Massachusetts had already adopted the concept but not the label. Halpern, *Intentional Torts and the Restatement,* 7 Buffalo L Rev 7, 10 (1957).

As soon as "prima facie tort" gained an independent status the controversy began as to its elements. Are special damages required? Is "malice" required? Brown, *The Rise and Threatened Demise of the Prima Facie Tort Principle,* 54 Northw U L Rev 563 (1959). In the present case counsel have some disagreement whether plaintiff must prove malicious conduct by defendants.

We probably are not in disagreement with the general principle, "the intentional infliction of temporal damages * * * requires a justification if the defendant is to escape." *Aikens v. Wisconsin,* supra (195 US at 204). We need not decide that proposition now. We are in disagreement, however, with the prop-

osition that this general principle should be made into a new tort category. The New York experience indicates the difficulties of transposing a very broad principle of liability into a specific tort. In Oregon we do not need to adopt a broad principle of liability as a specific tort category in order to evade the rigidities of existing causes of action.

This court has not felt unduly restricted by the boundaries of pre-existing common-law remedies. We have not hesitated to create or recognize new torts when confronted with conduct causing injuries which we feel should be compensable.[1] The court met the problem head on in *Hinish v. Meier & Frank Co.*, 166 Or 482, 113 P2d 438, 138 ALR 1 (1941). We unanimously created a cause of action for damages suffered by an intentional invasion of the plaintiff's right of privacy. Mr. Justice LUSK wrote:

"* * * The question is whether a right of privacy, distinct and of itself and not incidental to some other long recognized right, is to be accepted by the courts and a violation of the right held actionable. We are called upon, as Mr. Justice Holmes says somewhere, 'to exercise the sovereign prerogative of choice' between the view that the courts for want of a precedent are impotent to grant redress for injury resulting from conduct which universal opinion in a state of civilized society would unhesitatingly condemn as indecent and outrageous, and the view that the common law, with its capacity for growth and expansion and its adaptability to the needs and requirements of changing conditions, contains within itself the resources of principle upon which relief in such a case can be founded. * * *." 166 Or at 502-503.

We shall direct our inquiry to the question of whether the plaintiff suffered harm which the com-

---

[1] At least some portions of the bench and bar are of the opinion that the court has been too unrestrained.

munity would conclude should be compensated because of conduct of the defendants.

■ We recognize as defendants assert, that generally, in the absence of a contract or legislation to the contrary, an employer can discharge an employee at any time and for any cause. Conversely, an employee can quit at any time for any cause. Such termination by the employer or employee is not a breach of contract and ordinarily does not create a tortious cause of action. The question to us is, however, are there instances in which the employer's reason or motive for discharging harms or interferes with an important interest of the community and, therefore, justifies compensation to the employee?

Other courts have held that there are such instances. In *Petermann v. International Brotherhood of Teamsters,* 174 Cal App2d 184, 344 P2d 25 (1959), the plaintiff was discharged by his employer for refusing to give perjured testimony before a committee of the legislature. A judgment on the pleadings for the defendant employer was reversed.

In *Monge v. Beebe Rubber Company,* 114 NH 130, 316 A2d 549 (1974), the plaintiff employee claimed "she was harassed by her foreman because she refused to go out with him and that his hostility, condoned if not shared by defendant's personnel manager, ultimately resulted in her being fired." 316 A2d at 550. The court reversed an order of a trial court setting aside the verdict of the jury in favor of plaintiff.

In *Frampton v. Central Indiana Gas Company,* 297 NE2d 425 (Ind 1973), the plaintiff employee alleged he was discharged for filing a workmen's compensation claim. The court reversed the order of the trial court dismissing the complaint for failing to state a cause of action.

On other occasions courts have not rejected the

principle of the cited cases but found it not applicable. In *Stephens v. Justiss-Mears Oil Company,* 300 S2d 510 (La App 1974), the court expressly reserved an opinion as to the correctness of *Frampton* and distinguished *Frampton.*

In *Geary v. U. S. Steel Corporation,* 456 Pa 171, 319 A2d 174 (1974), the employee alleged he believed a product of his employer was unsafe; he voiced his view to his superiors who told him to "follow directions"; he took his case to a vice president and the product was withdrawn from the market. However, because of plaintiff's activities he was discharged. A majority of the court affirmed the sustaining of a demurrer to plaintiff's complaint while recognizing under some circumstances that an employee might have a right to damages.

The same division of the court that decided the *Petermann* case, cited above, in *Becket v. Welton Becket & Associates,* 39 Cal App3d 815, 114 Cal Rptr 531 (1974), distinguished *Petermann* and held for the employer. In *Becket* plaintiff was employed by a corporate architectural firm. Plaintiff's father, who owned all of the stock in the firm, died and plaintiff was appointed co-executor of his father's estate. Plaintiff also was the largest legatee. Plaintiff as co-executor brought a suit against the firm and his co-executor alleging breach of fiduciary duties, corporate waste and improper usurpation of corporation control. The defendant firm told plaintiff to drop the litigation or they would discharge him. Plaintiff persisted and he was discharged. The court stated there was no statute evidencing any public policy protecting any right of an employee to sue his employer as a fiduciary or in a stockholder's derivative suit.

Our recent decision in *Campbell v. Ford Industries, Inc.,* 266 Or 479, 513 P2d 1153 (1973), probably falls into the same category as the case just dis-

cussed. In both the interest of the employee was purely private and not of general public concern. In *Campbell* the plaintiff alleged he was a minority stockholder and employee of the defendant. He alleged he was discharged because he refused to sell his stock to defendant. We held that while he might be able to recover for any injury to his interest as a shareholder, he could not recover for any injury to his interest as an employee.

■ We conclude that there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done. The next question is, does the evidence in this case permit a finding that such circumstances are present?

There is evidence from which the jury could have found that the defendants discharged the plaintiff because, after being subpoenaed, and contrary to the defendants' wishes, plaintiff told the clerk she would like to serve and she did serve on jury duty.[2] Therefore, the immediate question can be stated specifically,—is the community's interest in having its citizens serve on jury duty so important that an employer, who interferes with that interest by discharging an employee who served on a jury, should be required to compensate his employee for any damages she suffered?

Art VII, § 3, of the Oregon Constitution provides that jury trial shall be preserved in civil cases. Art I, § 11, provides a defendant in a criminal case has a right of trial by jury. Art VII, § 5, provides: "The Legislative Assembly shall so provide that the

---

[2] If the only evidence was that the defendants would have suffered a substantial hardship if plaintiff served this particular month, defendants requested only a postponement of jury service but the plaintiff nevertheless asked to serve this particular month, we probably would regard the discharge as justifiable.

most competent of the permanent citizens of the county shall be chosen for jurors."

ORS 10.040 provides for certain exemptions from jury duty. ORS 10.050 provides for certain excuses from jury duty including health, age and "(c) When serving as a juror would result in extreme hardship to the person including but not limited to unusual and extraordinary financial hardship." ORS 10.055 provides for deferment of jury duty "for good cause shown" for not more than one year. ORS 10.990 provides that if a juror "without reasonable cause," neglects to attend for jury service the court may impose a fine, not exceeding $20 for each day the juror does not attend.

*People v. Vitucci,* 49 Ill App2d 171, 199 NE2d 78 (1964), stated that an employer who discharged an employee who was absent because of jury duty was guilty of contempt of court. Massachusetts has a statute making such conduct contemptuous. 44 Mass GLA, ch 268, § 14A.

■ These actions by the people, the legislature and the courts clearly indicate that the jury system and jury duty are regarded as high on the scale of American institutions and citizen obligations. If an employer were permitted with impunity to discharge an employee for fulfilling her obligation of jury duty, the jury system would be adversely affected. The will of the community would be thwarted. For these reasons we hold that the defendants are liable for discharging plaintiff because she served on the jury.

The defendants moved to remove the issue of punitive damages from the jury and assign as error the trial court's denial of their motion.

In *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 425, 435 P2d 306 (1967), we stated the general rule for determining when punitive damages can be

awarded: "Punitive damages can only be justified on the theory of determent. * * *. It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper."

We have created a right in plaintiff to recover compensatory damages because of the substantial "societal interests" in having citizens serve on juries. Under usual circumstances this logically would lead to the further conclusion that a jury could award punitive damages to prevent invasions of this "societal interest."

There is one factor, however, which is present in this case which has not been present in past cases approving the submission of the punitive damage issue to the jury. In our past cases the defendant knew his conduct was regarded as culpable and would give rise to a cause of action because of past judicial decisions or legislation. For example: An automobile dealer turning back the odometer to deceive the purchaser, *Lewis v. Worldwide Imports,* 238 Or 580, 395 P2d 922 (1964); a finance company converting an automobile by wrongful repossession, *Pelton v. Gen. Motors Accept. Corp.,* 139 Or 198, 7 P2d 263, 9 P2d 128 (1932); and a drunken driver colliding with another car, *Harrell v. Ames,* 265 Or 183, 508 P2d 211 (1973).

Until the trial court's ruling in this case and our affirmance there was no judicial decision that an employer was liable if he discharged an employee because she served jury duty. As we earlier stated, the general rule known to employers and lawyers alike is that absent contract or statute, an employer can discharge an employee for any reason without incurring liability.

If we held that punitive damages could be

awarded in the present case we would be permitting the jury to punish defendants for conduct which they could not have determined beforehand was even actionable. The assessment of punitive damages has some of the same functions as the sanctions of criminal law. Hodel, *Exemplary Damages in Oregon,* 44 Or L Rev 175, 180 (1965). The sanctions of the criminal law cannot constitutionally be imposed when the criminality of the conduct is not capable of being known beforehand.

We have shared the common knowledge of the community that such practices as turning back odometers, tortious repossession of automobiles and injuries by drunken drivers were common and there was a known need for deterrence. We have no knowledge whether the practice of discharging employees for serving on juries is common or whether it will continue after we have declared such a discharge to be tortious.

For these reasons we conclude that the plaintiff should not be awarded punitive damages.

That part of the judgment awarding $650 compensatory damages is affirmed; that part of the judgment awarding punitive damages in the amount of $3,000 is reversed. The trial court will enter judgment accordingly.