Argued December 3, 1975, reversed and remanded February 12, 1976

# CAMPBELL, *Appellant,*
## *v.*
# FORD INDUSTRIES, INC. et al, *Respondents.*

546 P2d 141

*Charles Robinowitz,* Portland, argued the cause for appellant. With him on the briefs was Henry A. Carey, Jr., Portland.

*James H. Clarke* of Dezendorf, Spears, Lubersky & Campbell, Portland, argued the cause for respondents. Also on the brief were Wayne Hilliard and Richard H. Williams, Portland.

TONGUE, J.

## TONGUE, J.

This is an action for damages for wrongful discharge of plaintiff from his employment with Ford Industries, Inc., and, in the alternative, for wrongful interference by the defendants with his employment relationship with Ford Industries.[1] The trial court sustained defendants' demurrer to plaintiff's second amended complaint. Plaintiff declined to plead further and appeals from the resulting judgment in favor of the defendants.

By this appeal plaintiff asks this court to decide the following questions:

(1) Whether plaintiff is entitled to damages for wrongful discharge from his employment where the discharge was allegedly motivated because of the plaintiff's exercise of a statutory right, and

(2) Whether an alternative cause of action for wrongful interference with plaintiff's employment relationship resulting in his discharge, as alleged in his second amended complaint, "relates back" to his original complaint for wrongful discharge, so as not to be barred by the statute of limitations.

1. *Plaintiff's complaint failed to allege facts sufficient to show that his discharge was wrongful.*

Plaintiff's primary contention is that "[a]n employer may not discharge an employee in retaliation for exercising a legal right specifically expressed in a legislative statute" and that "[i]n the instant case, the defendants discharged the plaintiff for requesting corporate information in accordance with ORS 57.246."

ORS 57.246, upon which plaintiff relies, provides that stockholders have the right to examine the books

---

[1] The defendants include Ford Industries, Inc., Roseburg Lumber Co., Kenneth Ford, Allyn C. Ford, Jack E. Snodgrass and Frank H. Spears.

and records of a corporation under conditions provided by the terms of that statute.[2]

Plaintiff's complaint alleged as its first cause of action that:

"I

"At all times relevant herein, plaintiff was employed as a mechanical engineer of defendant Ford Industries, Inc.; and was an owner of common stock in Ford Industries, Inc.

"* * * * *

---

[2] ORS 57.246 provides as follows:

"(1) Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its shareholders and board of directors; and shall keep at its registered office or principal place of business, or at the office of its transfer agent or register, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each.

"(2) Any person who shall have been a shareholder of record for at least six months immediately preceding his demand or who shall be the holder of record of at least five percent of all the outstanding shares of a corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom. The corporation shall mail a copy of its latest financial statement to any shareholder upon his written request therefor.

"(3) Any officer or agent who, or a corporation which, shall refuse to allow any such shareholder, or his agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to such shareholder in a penalty of 10 percent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him by law. It shall be a defense to any action for penalties under this section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders of such corporation or any other corporation, or was not acting in good faith or for a proper purpose in making his demand.

"(4) Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a shareholder of proper purpose, irrespective of the period of time during which such shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation."

[ 246 ]

"III

"In May, 1971, plaintiff requested certain corporate information from defendant Ford Industries relative to the value of his stock in Ford Industries and whether any of the defendants were engaged in any corporate misdealing.

"IV

"In retaliation for plaintiff's request and to deter plaintiff and others from requesting corporate information alleged above, defendants fired plaintiff from his employment with defendant Ford Industries on or about May 28, 1971."

The complaint then alleged that "the firing of plaintiff by defendants was intentional and malicious" and sought both actual and punitive damages, including $250,000 for loss of earnings, among other things.

Defendants contend that plaintiff's complaint does not allege facts sufficient to show that his request was made pursuant to ORS 57.246. There may be a serious question whether the allegations of plaintiff's complaint are sufficient for that purpose. For the purposes of this case, however, we shall nevertheless assume that plaintiff's request was made under the terms of that statute; that he had a right under its terms to examine the books and records of defendant Ford Industries and that he was discharged by defendants in retaliation for the attempted exercise of that right.

■ In *Campbell v. Ford Industries, Inc.,* 266 Or 479, 485, 513 P2d 1153 (1973), we affirmed the sustaining of a demurrer in a previous action involving the same plaintiff and most of the same defendants and also involving plaintiff's discharge on or about the same date and said that:

"In seeking to resolve this question we must consider what has normally been recognized to be the unqualified right of an employer to discharge an employee for any reason and regardless of cause or motive, in the absence

of limitations on their right imposed by provisions of statute or contract. * * *"[3]

Plaintiff contends that since our decision in that case it has been held by this and other courts that "an employer may not discharge an employee where the grounds for discharge would tend to frustrate a public policy" or "would violate a legislative statutory scheme," citing *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975); *Stewart v. Travelers Corporation,* 503 F2d 108 (9th Cir 1974); *Monge v. Beebe Rubber Company,* 114 NH 130, 316 A2d 549 (1974); and *Frampton v. Central Indiana Gas Company,* 260 Ind 249, 297 NE2d 425, 63 ALR 3d 973 (1973). Plaintiff also cites *Montalvo v. Zamora,* 7 Cal App 3d 69, 86 Cal Rptr 401 (1970); and *Glenn v. Clearman's Golden Cock Inn, Inc.,* 192 Cal App 2d 793, 13 Cal Rptr 769 (1969), as well as cases not involving claims of wrongful discharge.

Based upon these authorities, plaintiff contends that:

"If an employer may fire an employee with impunity because the employee, as a stockholder, pursued certain legal rights, this would frustrate the purpose of ORS 57.246 for those corporate employees who acquired stock either by investment or through corporate stock option plans. That stockholder would have a choice of pursuing a 10 percent penalty, less attorney's fees, and a new job or letting matters rest, and for most if not all, the choice would be clear. No one would pursue any remedies under ORS 57.246, and the statute would be effective only for those stockholders who were not employees of the company."

Different considerations might be involved in a case involving the discharge of an employee for exercising rights under ORS 57.246 when that employee

---

[3]The question whether the judgment in that case is *res judicata* in this case is not now before this court—that question being ordinarily raised by affirmative defense, rather than by demurrer. Plaintiff contends that his complaint in that case alleged a breach of defendants' fiduciary duty to him as a stockholder, while his complaint in this case alleges a breach of defendants' duty to him as an employee.

has acquired the stock under an employee stock ownership plan.[4] No such facts, however, are alleged by this complaint.

As stated in an annotation in 62 ALR3d 271 (1975), citing many cases:

> "Despite its sometimes harsh operation and the obvious opportunities for abuse it affords an unscrupulous employer, few legal principles would seem to be better settled than the broad generality that an employment for an indefinite term is regarded as an employment at will which may be terminated at any time by either party for any reason or for no reason at all.* * *"

However, in *Nees v. Hocks,* supra, we held (at 2064), that:

> "* * * [T]here can be circumstances in which the employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done. * * *"

In *Nees* we also held, in effect (at 2064-065), that "the community's interest in having its citizens serve on jury duty" was of such importance that "an employer, who interferes with that interest by discharging an employee who served on a jury, should be required to compensate his employee for any damages she suffered." In that same opinion we distinguished our previous decision in *Campbell v. Ford Industries, Inc.,* 266 Or 479, 513 P2d 1153 (1973), upon the ground that "the interest of the employee" in that case "was purely private and not of general public concern."

We are still of the same view. Although there may be reasons of public policy why the stockholders of a corporation should have the right to examine its books and records,[5] the primary basis for that right is not one

---

[4] See Bushman, The Employee Stock Ownership Plan, 113 Trusts & Estates 580 (1974), and O'Hara and Crawford, Will Every Corporation Have an E.S.O.P?, 61 A.B.A.J. 1367 (1975), and Note, Employee Stock Ownership Plans: A Step Toward Democratic Capitalism, 55 Boston U.L. Rev. 195 (1975).

[5] See *Commonwealth v. Pennsylvania Silk Co.,* 267 Pa 331, 110 A 157 (1920); *Hauser v. York Water Co.,* 278 Pa 387, 123 A 330, 331 (1924);

of public policy, but the private and proprietary interest of stockholders, as owners of the corporation. Thus, as stated in 4 Fletcher, Cyclopedia Corporations 784-85, § 2213 (Perm ed 1967):

> "* * * the stockholders' right of inspection of the corporation's books and records rests upon the underlying ownership by them of the corporation's assets and property; the right is an incident of ownership of the corporate property * * *."[6]

This court has adopted the same view. See *Bernert v. Multnomah Lbr. & Box Co. et al,* 119 Or 44, 48, 247 P 155, 248 P 156 (1926). See also *Meyer v. Ford Industries,* 75 Adv Sh 2550, 2553, 272 Or 531, 535, 538 P2d 353 (1975), and *Rosentool v. Bonanza Oil and Mine Corp.,* 221 Or 520, 533, 352 P2d 138 (1960).

It follows, in our opinion, that because the primary basis for the right of inspection of the books and records of a corporation by its stockholders, as provided by ORS 57.246, is the protection of their private and proprietary interests as owners of the corporation, any additional reasons of public policy as the basis for such a right are far less compelling, as a matter of "community interest," than the "community interest in having its citizens serve on jury duty," as involved in *Nees v. Hocks,* supra.

In addition, we believe it to be significant that the conduct of the plaintiff for which she was discharged in *Nees* (her refusal to request that she be excused

---

*Durnin v. Allentown Federal Savings and Loan Ass'n,* 218 F Supp 716 (ED Pa 1963); *State v. Standard Oil Co. of Kansas,* 41 Del 172, 18 A2d 235 (1941); and *State v. Pacific Brewing & Malting Co.,* 21 Wash 451, 58 P 584 (1899).

[6]To the same effect, see Annot., 22 ALR 24, 57-59 (1923), as supplemented by annotations in 43 ALR 783 (1926); 59 ALR 1373 (1929); 80 ALR 1502 (1932); and 174 ALR 262 (1948).

Further, the generally recognized "proper purposes" for exercise of the stockholders' right of inspection relate to the private economic interests of the stockholders and not, except indirectly, to matters of public concern. See Henn, Law of Corporations 396-97, § 199 (1970), and Annot., 15 ALR2d 11 (1951).

from jury duty in order that she might perform her duties as an employee) related much more directly to her rights as an employee than did the conduct of the plaintiff in this case. His demand to inspect corporate books and records was an attempt to exercise his rights as a stockholder, and had no direct relation to his rights as an employee.

Upon examination of the remaining authorities cited by plaintiff in support of his position, we find that they are distinguishable on either similar or other grounds.[7]

Perhaps the most comparable case on its facts is *Becket v. Welton Becket & Associates,* 39 Cal App 3d 815, 114 Cal Rptr 531 (1974). In that case plaintiff was employed by a corporation of which his father owned all of the stock and died. Plaintiff was appointed co-executor of his father's estate. He was also the largest legatee. Plaintiff, as co-executor, brought a suit

[7] *Monge v. Beebe Rubber Co.,* 114 NH 130, 316 A2d 549 (1974), involved the discharge of an employee for resisting advances by her foreman while on the job. *Frampton v. Central Indiana Gas Company,* 260 Ind 249, 297 NE2d 425, 63 ALR 3d 973 (1973), involved the discharge of an employee for filing a workmen's compensation claim. *Stewart v. Travelers Corporation,* 503 F2d 108 (9th Cir 1974), involved the discharge of an employee for the garnishment of his wages, contrary to the provisions of a statute forbidding discharges for that reason.

Other employee discharge cases cited by plaintiff included *Montalvo v. Zamora,* 7 Cal App 3d 69, 86 Cal Rptr 401 (1970), involving the discharge of an employee who had engaged an attorney to represent his family in labor negotiations and whose wife was about to testify against her employer under the California Minimum Wage Law for women and minors; *Glenn v. Clearman's Golden Cock Inn, Inc.,* 192 Cal App 2d 793, 13 Cal Rptr 769 (1961), involving the discharge of an employee for engaging in union activities permitted by statute, and *Peterman v. International Brotherhood of Teamsters,* 174 Cal App 2d 184, 344 P2d 25 (1959), involving the discharge of an employee for refusing to give perjured testimony on behalf of his employer. Cf. *Geary v. United States Steel Corporation,* 456 Pa 171, 319 A2d 174 (1974), in which a divided court sustained the discharge of an employee who expressed concern over the safety of one of defendant's products.

See generally, Comment, Contracts—Termination of Employment at Will—Public Policy May Modify Employer's Right to Discharge, 14 Rutgers L Rev 624 (1960); Blades, Employment at Will v. Individual Freedom: On Limiting the Abusive Exercise of Employer Power, 67 Col L Rev 1404 (1967), and Note, Implied Contract Rights to Job Security, 26 Stan L Rev 335 (1974).

against the corporation and his co-executor alleging breach of fiduciary duties, corporated waste and improper usurpation of control of the corporation. He was then informed that unless he dropped the suit he would be discharged. Plaintiff refused to do so and was then discharged. The court refused to set aside the discharge, stating (at 534) that it could find "no strong public policy" to protect the right of an employee who is also a stockholder against discharge where he had filed such a suit against his employer. The court also (at 534) distinguished cases in which there was "either a criminal statute or a statute designed to specifically protect the rights of the employee vis-a-vis the employer * * *," including some of the cases cited by plaintiff in this case.

■ For these reasons we affirm the holding by the trial court in sustaining defendant's demurrer to the first cause of action as alleged in plaintiff's second amended complaint upon the ground that it failed to allege sufficient facts to constitute a cause of action for damages for wrongful discharge.

2. *Plaintiff's second cause of action for wrongful interference with his employment relationship was not barred by the statute of limitations.*

■ After the expiration of the statute of limitations, plaintiff filed an amended complaint adding, as a second cause of action, that in retaliation for plaintiff's request for "corporate information" Ford Industries was "induced" by the other defendants to discharge him.[8]

Plaintiff contends that this cause of action "relates back" to the original claim for wrongful discharge, so as not to be barred by the statute of limitations. Defendants contend to the contrary for two reasons:

(1) "* * * [B]ecause the original complaint stated no

---

[8]While an employment relation for an indefinite term is generally terminable at will, with or without cause, an interference by a third party with that relation is nevertheless actionable and defendants make no contrary contention. See Prosser, Torts § 129, at 932-33 (4th ed. 1971).

cause of action whatever * * *," citing *Mills v. Feiock,*
229 Or 618, 624, 368 P2d 327 (1962), among other cases.

(2) "* * * [B]ecause the facts relied on are different
from those alleged in the original complaint."

In support of the second of these contentions defendants cite *Brackhahn v. Nordling,* 269 Or 667, 526 P2d
221 (1974), our most recent decision on this subject, for
the proposition that an amended complaint can "relate
back" only if it claims relief because of the same "conduct" alleged in the original complaint.

In *Brackhahn v. Nordling,* supra, after reviewing
our previous decisions on this subject, we again
applied a "liberal rule" for application in such cases
and said (at 672) that:

"Not always clearly stated, but clearly implied in our
decisions, is the rationale that an amended pleading
should be permitted to relate back if the defendant is not
prejudiced. In those cases in which we held the amended
complaint could relate back, *the original complaint
apprised defendant that the plaintiff was claiming relief
because of defendant's conduct at a certain time and
place. If the amended pleading continues to claim relief
because of that same conduct of defendant but upon a
different theory, the defendant is not prejudiced because
of a change in theory or a change in the cause of action.*
The defendant is alerted to plaintiff's claim and has the
opportunity to investigate and do whatever is believed
necessary to protect itself. The claim does not become
stale because the legal theory or cause of action was
changed in the amended complaint." (Emphasis added)

We went on to say (at 673) that:

"Relating back is permitted although the- different
cause of action in the amended complaint involves some
issues which are different or in addition to those presented by the original complaint."

To the same effect, see *Ross v. Robinson,* 174 Or 25,
38, 147 P2d 204 (1944).

■   Upon application of this test to facts as alleged in
plaintiff's original complaint, as compared to the facts
alleged in the second cause of action of plaintiff's sec-

[ 253 ]

ond amended complaint, we find that although the original complaint alleged some facts "in addition" to those alleged in the amended complaint, the important operative facts upon which plaintiff relies in the amended complaint were also alleged, either directly or by clear implication, in the original complaint, at least to the extent necessary to alert defendants to plaintiff's claim so as to afford an opportunity to investigate and do whatever was necessary for protection; that, as a result, defendants were not prejudiced by the amended complaint; and that, as a further result, the amended complaint should be permitted to "relate back" under the test of *Brackhahn v. Nordling*, supra, and is not barred by the statute of limitations.

More specifically, the second cause of action of plaintiff's second amended complaint alleges that:

"In May, 1971, plaintiff requested certain corporate information from defendant Ford Industries, relative to the value of his stock in Ford Industries and whether any of the defendants were engaged in any corporate misdealing.[9]

"* * * * *

"In retaliation for plaintiff's request for corporate information alleged above, defendants [listing them] induced defendant Ford Industries to fire plaintiff from his employment with Ford Industries."

Plaintiff's original complaint, although attempting to state a cause of action for plaintiff's wrongful discharge by defendant Ford Industries, Inc., also named the same additional defendants. It alleged a "scheme" by all of the defendants which was "false, misleading, fraudulent and deceptive" to acquire the stock of all minority shareholders of defendant Ford Industries. It alleged (as in the amended complaint) that plaintiff requested "corporate information." It also alleged that plaintiff was discharged by defendants (presumably by all of them); that one of the reasons for plaintiff's discharge was "to make it more difficult" for the plain-

---

[9]This allegation of plaintiff's first cause of action was "re-alleged" by reference in plaintiff's second cause of action.

tiff to become aware of defendants' "scheme" and that another reason was to "deter plaintiff from requesting information" which would "thereby expose the fraudulent scheme of defendants."

Defendants say that the operative facts in the two pleadings were different in that the original complaint alleged a "scheme" to acquire plaintiff's stock, whereas the amended complaint alleges a "retaliatory discharge in response to a demand for information."

It may be that the emphasis of the original complaint was upon the "scheme." It is implied from such alleged facts, however, that the plaintiff's discharge was the result of his request for "corporate information" which might expose the existence of that "scheme" by all of the defendants and was thus "in retaliation" for plaintiff's request for corporate information, as now alleged by the use of that specific term. And although the original complaint did not specifically allege that Ford Industries was "induced" by the remaining defendants to discharge plaintiff, as now directly alleged, we believe that this is also implied. In any event, we believe that for the purpose of determining whether plaintiff's amended complaint "related back" to his original complaint, so as not to be barred by the statute of limitations, this alleged conduct by all of the defendants, acting together, was sufficient to constitute a wrongful interference by defendants other than Ford Industries in plaintiff's employment relationship with Ford Industries, unless such conduct was privileged or otherwise justified.[10]

Defendants contend that even plaintiff's second amended complaint does not state a cause of action for wrongful interference with plaintiff's employment "because it does not allege that Ford Industries' officers and directors induced plaintiff's discharge for a

---

[10] Defendants say that "it is not enough to cause the amended pleading to relate back that the underlying facts may be the same," citing *Pendrell v. Chatham College,* 386 F Supp 341 (D Pa 1974). We are not persuaded by that case, which we believe to be contrary to the rule adopted by this court in *Brackhahn v. Nordling,* 269 Or 667, 526 P2d 221 (1974).

reason unrelated to the welfare of the corporation." In support of this contention defendants cite *Wampler v. Palmerton,* 250 Or 65, 76-77, 439 P2d 601 (1968), and *Still v. Benton,* 251 Or 463, 470, 445 P2d 492 (1968), as holding that "an officer or director [of a corporation] is liable for interfering with a contract between his corporation and another only if he acted for his own personal advantage, and not to further the interests of the corporation."

There appears to be a split of authority on the question whether in such a case plaintiff has the burden to plead and prove that a defendant acted for personal advantage or whether the defendant has the burden to plead and prove that he acted to further the interests of the corporation. Defendants have cited cases from other jurisdictions holding that plaintiff has the burden of pleading and proof on this issue.[11] The question has not previously been decided by this court.

According to Prosser, Torts 942-43, § 129 (4th ed 1971):

> "Given the intention to interfere with the contract, liability usually will turn upon the ultimate purpose or object which the defendant is seeking to advance. The early cases, with their emphasis upon 'malice,' regarded proof of an improper motive as an essential part of the plaintiff's cause of action. As the tort became more firmly established, there was a gradual shift of emphasis, until today it is generally agreed that an intentional interference with the existing contractual relations of another is prima facie sufficient for liability, and that the burden of proving that it is 'justified' rests upon the defendant. Otherwise stated, and perhaps more accurately, the defendant may show that the interference is privileged by reason of the interests furthered by his conduct, but the burden rests upon him to do so. * * *"

See also Annot., 26 ALR2d 1227, 1263-264 (1952).

---

[11]Defendants cite *Tye v. Finkelstein,* 160 F Supp 666 (D Mass 1958); *Worrick v. Flora,* 133 Ill App 2d 755, 272 NE2d 708 (1971); and *Allison v. American Airlines,* 112 F Supp 37 (ND Okla 1953).

■■ We need not decide that question in this case, however. Defendants concede that this question was not raised by its demurrer in the trial court, which was limited to the statute of limitations.[12] Defendants say, however, that it is "available on appeal in any case."

In such a case the pleading is to be construed liberally in favor of the plaintiff. *Keegan et al v. Lenzie,* 171 Or 194, 202, 135 P2d 717 (1943). We believe that plaintiff's second amended complaint when construed liberally, as when tested for the first time on appeal, alleges sufficient facts to show that defendants acted from improper and personal motives in allegedly inducing Ford Industries to discharge plaintiff and that in doing so they did not act to benefit the corporation.

■ Plaintiff's second amended complaint alleged that one reason why plaintiff requested "corporate information" was to find out "whether any of the defendants were engaged in any corporate misdealing" and that these defendants induced Ford Industries to discharge plaintiff "in retaliation for plaintiff's request and to deter plaintiff and others from requesting corporate information." Stockholders, as the owners of a corporation, have the right to examine corporate records to determine whether any of its officers and directors have "engaged in any corporate misdealing." It follows, in our view, that officers and directors of a corporation may not properly take action to "deter" stockholders from doing so and that any officer or director who does so to prevent discovery whether he has engaged in "corporate misdealings" must be deemed to have acted for "personal advantage," rather than "to further the interests of the corporation."

For all of these reasons, we hold that the trial court

---

[12] We also note that defendants make no contention of improper joinder of causes of action, based upon a contention that plaintiff's second cause of action (for interference with plaintiff's employment) may fail to state a cause of action against defendant Ford Industries, while plaintiff's first cause of action (for wrongful discharge) may fail to state a cause of action against any defendant other than defendant Ford Industries.

erred in sustaining defendants' demurrer to the second cause of action as alleged in plaintiff's second amended complaint.

Reversed and remanded.