Argued and submitted July 13, reversed October 12, reconsideration denied November 18, petition for review allowed December 20, 1983 (296 Or 236)
See 297 Or 10, 681 P2d 114 (1984)

# DELANEY,
*Respondent,*

*v.*

# TACO TIME INTERNATIONAL, INC.,
*Appellant.*

(A8006-03371; CA A25912)

670 P2d 218

Emil R. Berg, Portland, argued the cause for appellant. With him on the briefs was Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

John P. Manning, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

### YOUNG, J.

Defendant appeals from a judgment on a jury verdict awarding plaintiff damages for lost wages, emotional distress and punitive damages. The principal question is whether plaintiff proved the common law tort of wrongful discharge from employment. Defendant argues six assignments of error. However, we need consider only one: the trial court's denial of defendant's motions for directed verdict. Plaintiff alleged in the amended complaint:

"IV

"Defendant demoted and then terminated plaintiff due to the fact that plaintiff refused to sign a false statement concerning the circumstances of the termination of another employee, [Ms.] White.

"V

"Said reason for demotion and termination of plaintiff interfered with an important interest of the community in maintaining honesty in business relationships and in not making false statements as a condition of employment."[1]

The general rule is that, in the absence of a contract, statute or constitutional requirement to the contrary, an employer may discharge an employe, or an employe may quit, at any time for any reason. *Simpson v. Western Graphics*, 293 Or 96, 99, 643 P2d 1276 (1982); *Maddox v. Clac. Co. Sch. Dist. No. 25*, 293 Or 27, 31, 643 P2d 1253 (1982). *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975), created a narrow exception to the rule. In *Nees* the specific question was:

"[I]s the community's interest in having its citizens serve on jury duty so important that an employer, who interferes with that interest by discharging an employee who served on a jury, should be required to compensate his employe for any damages she suffered?" 272 Or at 218.

The court concluded that "there can be circumstances in which an employer discharges an employe for such a socially undesirable motive that the employer must respond in damages for any injury done." 272 Or at 218. The court held that discharging the plaintiff because she served on jury duty

---

[1] One of the assignments of error is the denial of defendant's motion to dismiss the amended complaint because the allegations do not state a claim for wrongful discharge. ORCP 21A.

was a "socially undesirable motive" and affirmed the judgment for compensatory damages.[2]

■    It is clear from *Nees v. Hocks, supra,* and the cases summarized in note 2, that a cause of action for wrongful discharge will lie *when the discharge is contrary to a clear mandate of public policy, such as the violation of some express statutory objective.* Under this standard, the dispositive issue is whether plaintiff proved conduct of defendant which was sufficient to withstand motions for directed verdict at the end of the case in chief and at the close of the trial. Defendant's position is that plaintiff's termination was not of the kind that creates a cause of action for wrongful discharge.

Much of the evidence is in dispute. Because the jury's verdict was for plaintiff, we must review the evidence in the light most favorable to him. *Green v. Uncle Don's Mobile City,* 279 Or 425, 427, 568 P2d 1375 (1977).

Plaintiff was the manager of a Taco Time outlet in Portland. In December, 1979, he asked his district manager, Ledbetter, how to handle Ms. White, an employe, who appeared to plaintiff to be disruptive and less than cooperative. Plaintiff followed Ledbetter's advice to talk with her, and plaintiff believed that the problems were resolved.

At about the same time, Ledbetter solicited the comments of two customers. The customers complimented the food and service but said that they would not be eating there as often because there were too many black employes.

---

[2] *Nees* summarized decisions from other jurisdictions. Examples of cases permitting an employe to recover damages for wrongful discharge are: *Petermann v. International Brotherhood of Teamsters, infra,* (employe discharged for refusing to give perjured testimony before a legislative committee); *Monge v. Beebe Rubber Company,* 114 NH 130, 316 A2d 549 (1974) (employe refused to date the foreman and was discharged); *Frampton v. Central Indiana Gas Company,* 297 NE 2d 425 (Ind 1973) (employe discharged for filing a workers' compensation claim); *see also Brown v. Transcom Lines, infra,* (holding, when statute made it an unlawful employment practice to discriminate against an employe for making a claim for workers' compensation, that a retaliatory discharge for filing a claim was such a socially undesirable motive to give rise to a cause of action for wrongful discharge.) Cases denying a claim for wrongful discharge are: *Geary v. U.S. Steel Corporation,* 456 Pa 171, 319 A2d 174 (1974) (employe discharged for complaining that employer's product was unsafe); *Becket v. Welton, Becket & Associates,* 39 Cal App 3d 815, 114 Cal Rptr 531 (1974) (discharging an employe who brought a stockholder's derivative action against the corporate employer); *see also Campbell v. Ford Industries, Inc., infra,* (discharged employe refused to sell his stock to his employer; holding that "interest of the employe was purely private and not a general public concern").

On that basis, Ledbetter suggested to plaintiff that he hire two whites. Plaintiff, who is black, had the impression that Ledbetter's suggestion required the firing of black employes. On cross examination plaintiff testified:

"Q Just to clarify on that point, find out what your testimony is today, did Mr. Ledbetter tell you that you had to fire two blacks to make room for two white employes?

"A He gave me that impression.

"Q So in fact that is your assumption that is what he wanted you to do was to fire two blacks and hire two whites; true?

"A You are asking me the * * * that my assumption?

"Q Yes, was that an assumption?

"A Yes."

On December 15, 1979, plaintiff called an employe meeting and asked Ledbetter to attend. At the meeting, plaintiff told the employes that they would not be receiving a raise. White objected and said that she deserved a raise. According to plaintiff, sometime later Ledbetter told him to discharge White, because she did not meet Taco Time standards.[3] On December 18, plaintiff fired White, a black employe, believing that he was doing so in order to make room to hire white employes.

White applied for unemployment compensation and said that she was discharged to make room for a white employe. She also told Messal, Ledbetter's supervisor, that she had been advised to contact Legal Aid. Because Ledbetter knew that White could not be lawfully discharged for the reason she gave, he arranged to meet with plaintiff on January 9. At that meeting, Ledbetter wrote the circumstances surrounding White's discharge on a printed form entitled "Unit Service Report."[4] Ledbetter's conclusion was that White must

---

[3] Ledbetter denied giving an order to fire White. He said that he had only expressed concern that the crew work smoothly while plaintiff was on vacation over the Christmas holiday. Ledbetter testified that he did not know of White's termination until after she had been fired.

[4] The "Unit Service Report" reads in relevant part:

"OBJECTIVE OF THIS CALL

"1) To discuss the termination of * * * White

be rehired. Plaintiff refused to sign the report, because he felt that it contained untrue statements. Although his testimony is unclear, his principal objection was the reference to White offering to sleep with him. Ledbetter warned plaintiff that his refusal could jeopardize his employment.

On January 15, 1980, Ledbetter and Messal returned for another meeting with plaintiff. Messal insisted that plaintiff sign the report and rehire White. Plaintiff refused, saying that White had secured a better job and did not want to be rehired. Messal then terminated plaintiff as manager but

---

### "COMMENTS

"My notes show that [plaintiff] talked to me about a personnel problem with [White]. My notes show that [plaintiff] told me that [White] asked him to sleep with her and that when he would not that she started causing dissension within the crew.

"[Plaintiff] now tells me that she asked him to come over to her house and that he declined.

"[Plaintiff] also has said that the problem was solved by the beginning of the month (Dec) although my records show that we had talked about it on 12-15 after a crew meeting.

"[Plaintiff] asked me on or about 12-15 to take two weeks vacation. When I inquired about how well the store would run he said it would be OK. I then asked if [White] would cause any problems while he was gone and that if she would that it would be best if she was terminated.

"Also on 12-14-79 I discussed with [plaintiff] statements I had heard from two local patrons of the store that although the store was clean and the food was good they weren't eating here as frequently as they would if the crew were not all black.

"I suggested the addition of one or two white people but in no way did I suggest that he terminate anyone because of their color.

"[Plaintiff] said today that he thought I had told him to fire [White] because she was black and I made very clear that this was not my intention at all and that the customer comments I heard had nothing whatsoever to do with terminating [White].

"At this point in our conversation [plaintiff] got up from the table & refused to talk with me at all. When I insisted he threatened to leave. I told him if he did I would consider it a resignation. He stayed. * * *

### "ACTION TO BE TAKEN BY MANAGER

"Based on the information I have at this time and what [plaintiff] has said to me [White] must be reinstated if she so desires.

"I understand and agree with the above statements

"Managers signature (Manager refused to sign)

"District Managers signature Greg Ledbetter /s/"

offered to transfer him to a Eugene outlet as an assistant manager. He refused the offer and was terminated.

Plaintiff states that, "[b]oiled down to the basic facts, plaintiff was discharged by defendant because he refused to sign a false statement regarding the circumstances of the termination of another employe." He maintains that such a discharge is actionable.

In beginning our analysis, we start with the understanding that there is no claim that the "false statement" was to be used as evidence in any administrative or judicial proceeding. Further, at oral argument it was made clear that the action was not tried on the basis, and no claim was made, that either plaintiff or White was discriminated against because of their race. Accordingly, the question is whether plaintiff has proved a claim for wrongful discharge on the basis that he was required to sign a false statement to retain his employment. He argues that it is analogous to requiring him to commit perjury. In support of that argument, he directs our attention to decisions from other jurisdictions. In *Petermann v. International Brotherhood of Teamsters,* 174 Cal App 2d 184, 344 P2d 25 (1959), the court held that the plaintiff stated a cause of action for wrongful discharge when he alleged that he had been dismissed because of his refusal to follow his employer's instructions to testify falsely under oath before a legislative committee. To do so would have been perjury, a criminal act. The court held that, as a matter of law, "public policy and sound morality would not condone the employer's conduct." In *Trombetta v. Detroit Toledo & Ironton R. Co.,* 81 Mich App 489, 265 NW2d 385 (1978), the employe alleged that he was discharged because he refused to alter his employer's pollution control reports. The reports were to be filed with the state to insure compliance with state pollution law. The court held that plaintiff had stated a cause of action for wrongful discharge. In *Petermann* and *Trombetta* the acts complained of were prohibited by statute. In the present case, plaintiff has not directed us to a statute that makes the signing of the "false statement" an illegal act or a violation of a statutory objective, nor did he plead or prove that his discharge by defendant was by reason of an improper motive, as in *Nees v. Hocks, supra.* Accordingly, we turn to the question whether plaintiff's termination violated an established principle of public policy "in

maintaining honesty in business relationships and in not making false statements as a condition of employment."

There are no Oregon decisions directly in point. *Campbell v. Ford Industries, Inc.,* 274 Or 243, 546 P2d 141 (1976), draws a distinction between a private business interest and a public interest. In that case, the court held that the plaintiff, who was a stockholder and former employe, did not state a cause of action by alleging that he was discharged in retaliation for exercising his statutory right to inspect corporate records. The court found that the discharge was not the result of a "socially undesirable motive" and that the statutory right of inspection was primarily a protection of a private interest and not of public interest.

In *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977), the plaintiff alleged that he was wrongfully discharged because he had complained about unsafe working conditions. The court acknowledged a substantial community interest in maintaining safe working conditions but declined to extend the *Nees* exception, because other existing laws provided adequate remedies to protect "the interests of society in maintaining safe work conditions and the interests of employees who are discharged for complaining about safety and health problems." 278 Or at 352. In *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), the plaintiff was discharged for filing a worker's compensation claim. ORS 659.410, made it an unlawful employment practice to discriminate against an employe who files such a claim. The court held that the statute was a legislative recognition "of a public policy which provides a proper basis for application of the rule as stated in *Nees* * * *," 284 Or at 604, and the employer must respond in damages. The cases cited emphasize the common law rule that employment at will may be terminated by either party at any time for any reason. *See* Annot., 12 ALR4th 544 (1982). A case to qualify as an exception to the general rule must be exceptional. That is, the discharge must be contrary to a clear mandate of public policy, whether established by statute, rule or court decision.

■ Although society no doubt favors honesty in business, the phrase "honesty in business" is too broad and too general to implicate any such clear mandate of public policy. While it may be true that society has a strong general interest

in discouraging dishonesty in business, such as fraud, society is far less concerned with the more menial mendacities which lead to countless private quarrels in business, as they do in all other spheres of life. This case is one of the latter type - a private quarrel in which no strong public interest is implicated. Were we to accept plaintiff's theory, any discharge on the basis of one's personal view of honesty or dishonesty would become a *prima facie* case of wrongful discharge. The general rule would be swallowed by the exception. We decline to adopt such a standard, and the judgment must be reversed.

Reversed.[5]

---

[5] Because of this disposition we do not address the remaining assignments of error.