Argued and submitted March 6, reversed April 24, 1984

DELANEY,
*Petitioner on review,*

*v.*

TACO TIME INTERNATIONAL, INC.,
*Respondent on review.*

(A8006-03371; CA A25912; SC S30172)

681 P2d 114

John P. Manning, Portland, argued the cause and filed the petition and brief for petitioner on review.

Gary V. Abbott, Portland, argued the cause for respondent on review. With him on the briefs were Emil R. Berg and Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

JONES, J.

Campbell, J., filed a dissenting opinion.

## JONES, J.

This case presents the question whether plaintiff proved the common-law tort of wrongful discharge. A jury awarded plaintiff damages for lost wages, emotional distress and punitive damages. Defendant appealed and the Court of Appeals reversed. We allowed review and reverse the Court of Appeals and affirm the trial court judgment.

■        Much of the evidence is in dispute in this case. Because the jury's verdict was for plaintiff, we review the evidence in the light most favorable to plaintiff. *Green v. Uncle Don's Mobile City,* 279 Or 425, 427, 568 P2d 1375 (1977).

In December, 1979, plaintiff managed one of defendant's Portland restaurants. Plaintiff asked his district manager, Ledbetter, how to handle Ms. White, a black employe with whom plaintiff had been having trouble. Ledbetter advised plaintiff to talk with White, which he did, and plaintiff believed the problems were resolved.

During the same time, Ledbetter, who also had been manager of this restaurant, received comments from customers about the restaurant. The customers complimented the service and food but reported that they would not be eating there as often because there were too many black employes. Ledbetter implied to plaintiff, who is black, that plaintiff should fire Ms. White to make room for a white employe. On December 18, 1979, plaintiff fired White.

When White applied for unemployment compensation she reported that she had been discharged to make room for a white employe. On January 9, 1980, Ledbetter called a meeting with plaintiff because he knew that White could not be lawfully discharged for that reason. At that meeting, Ledbetter filled out a Unit Service Report[1] describing the circumstances of White's discharge:

*"OBJECTIVE OF THIS CALL*
"1)    To discuss the termination of * * * White

*"COMMENTS*
"My notes show that [plaintiff] talked to me about a personnel problem with [White]. My notes show that [plaintiff] told me that [White] asked him to sleep with her and that

---

[1] According to plaintiff, Unit Service Reports were supposed to be reports on the unit and not about individual employes.

when he would not that she started causing dissension within the crew.

"[Plaintiff] now tells me that she asked him to come over to her house and that he declined.

"[Plaintiff] also has said that the problem was solved by the beginning of the month (Dec) although my records show that we had talked about it on 12-15 after a crew meeting.

"[Plaintiff] asked me on or about 12-15 to take two weeks vacation. When I inquired about how well the store would run he said it would be OK. I then asked if [White] would cause any problems while he was gone and that if she would that it would be best if she was terminated.

"Also on 12-14-79 I discussed with [plaintiff] statements I had heard from two local patrons of the store that although the store was clean and the food was good they weren't eating here as frequently as they would if the crew were not all black.

"I suggested the addition of one or two white people but in no way did I suggest that he terminate anyone because of their color.

"[Plaintiff] said today that he thought I had told him to fire [White] because she was black and I made very clear that this was not my intention at all and that the customer comments I heard had nothing whatsoever to do with terminating [White].

"At this point in our conversation [plaintiff] got up from the table & refused to talk with me at all. When I insisted he threatened to leave. I told him if he did I would consider it a resignation. He stayed. * * *"

The report concluded that White must be reinstated. Plaintiff refused to sign the report because he felt it contained untrue statements. Specifically, plaintiff objected to the statement that White had asked plaintiff to sleep with her and when he refused she caused dissension at work. Ledbetter warned plaintiff that refusing to sign the report could jeopardize his employment.

On January 15, 1980, Ledbetter and his supervisor, Messal, met with plaintiff. Messal insisted that plaintiff sign the report and rehire White. Plaintiff refused, saying that White did not want to be rehired because she had obtained a better job. Messal terminated plaintiff as manager but offered

him the position of assistant manager in a Eugene outlet. Plaintiff refused the offer and was discharged.[2]

The question in this case is whether plaintiff has proved a claim for the common-law tort of wrongful discharge on the basis that he was required to sign a false and potentially defamatory statement to retain his employment.[3] We hold that he has.

■ The general rule regarding employment at will is that an employer may discharge an employe or an employe may quit at any time for any reason. *Simpson v. Western Graphics,* 293 Or 96, 99, 643 P2d 1276 (1982); *Maddox v. Clack. County Sch. Dist. No. 25,* 293 Or 27, 31, 643 P2d 1253 (1982). This general rule has met a growing number of challenges with a variety of results.[4] Some jurisdictions authorize a recovery for breach of contract based upon an implied contractual duty of the employer not to terminate the employe for motives regarded as violative of public policy. *See, Cleary v. American Airlines, Inc.,* 111 Cal App 3d 443, 168 Cal Rptr 722 (1980); *Pierce v. Ortho Pharmaceutical Corp.,* 84 NJ 58, 417 A2d 505 (1980); *Monge v. Beebe Rubber Co.,* 114 NH 130, 316 A2d 549 (1974). *But see Martin v. Tapley,* 360 So 2d 708 (Ala 1978); *Larsen v. Motor Supply Co.,* 117 Ariz 507, 573 P2d 907 (1977). Other jurisdictions provide employes a remedy in tort for wrongful or retaliatory discharge on the theory that dismissal of employes for reasons violative of a particular pulic policy should be actionable. *See, Tameny v. Atlantic Richfield Co.,* 27 Cal 3d 167, 164 Cal Rptr 839, 610 P2d 1330 (1980); *Kelsay v. Motorola, Inc.,* 74 Ill 2d 172, 384 NE2d 353 (1978); *Patterson v. Philco Corp.,* 252 Cal App 2d 63, 60 Cal Rptr 110 (1967). *But see Goodroe v. Georgia Power Co.,* 148 Ga App 193, 251 SE2d 51 (1978); *Hinrichs v. Tranquilaire Hospital,* 352 So 2d 1130 (Ala 1977).

---

[2] The defendant did not contend that this was merely a demotion or transfer and not a discharge.

[3] As the Court of Appeals noted in its opinion, this case "was not tried on the basis, and no claim was made, that either plaintiff or White was discriminated against because of their race." 65 Or App at 166.

[4] For interesting discussions of cases in this area, see Note, *Defining Public Policy Torts in At-Will Dismissals,* 34 Stan L Rev 153 (1981); Note, *A Common Law Action for the Abusively Discharged Employee,* 26 Hastings L J 1435 (1975).

In *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), we recognized an exception to the general rule that an employer can discharge an employe at will and allowed plaintiff a remedy in tort for wrongful discharge. In *Nees,* an employe was discharged for serving on jury duty. Stating that the jury system and jury duty are highly regarded societal obligations, as reflected in the Oregon constitutional and statutory provisions giving the right to jury trials, we concluded that an employer could not fire plaintiff for fulfilling her societal obligation and plaintiff could sue for wrongful discharge.

In *Campbell v. Ford Industries, Inc.,* 274 Or 243, 546 P2d 141 (1976), plaintiff, a stockholder and employe, was fired in retaliation for exercising his statutory right to inspect corporate records. This court noted that the statute's primary purpose was to protect private and proprietary interests rather than public interests. 274 Or at 250. Plaintiff was discharged for exercising a private statutory right not of great importance to society. We affirmed the trial court's holding that plaintiff failed to allege sufficient facts to constitute a wrongful discharge cause of action.

In *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977), this court held that although the discharge of an employe for complaining about unsafe working conditions frustrated an important social interest in safe working conditions, the employe had an adequate administrative remedy, a complaint to the Department of Labor, and would not be accorded an additional tort remedy.

In *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), the plaintiff filed a workers' compensation claim and was discharged for so doing. ORS 659.410 makes discriminating against an employe who files a workers' compensation claim an unlawful employment practice. We held that the statute was legislative recognition of an important public policy and the employer's discharge frustrated that substantial public interest.

The preceding cases fall into three general categories:

*Nees* is an example of the first category of cases, where plaintiff was discharged for fulfilling a societal obligation. To discharge an employe for being called to jury duty thwarts not a private interest of the employe but an important

public function. The oft-cited case of *Petermann v. International Brotherhood of Teamsters,* 174 Cal App 2d 184, 344 P2d 25 (1959), also comes within this category. In *Petermann,* plaintiff was fired for refusing to follow his employer's instructions to testify falsely under oath. To do so would have been perjury, a severe breach of a public duty. In both *Nees* and *Petermann* plaintiffs were held to have been wrongfully discharged.

The second category is demonstrated by *Campbell* and *Brown.* In both cases, plaintiffs pursued private statutory rights and were fired for their pursuit. In *Brown,* plaintiff was entitled to a wrongful discharge remedy and in *Campbell,* plaintiff was not. What is the difference? The statutory right pursued in *Brown* related directly to the plaintiff's role as an employee. He was fired for filing a worker's compensation claim. In *Campbell,* the statutory right pursued by plaintiff related to plaintiff, not in his role as an employee, but in his role as a stockholder. Furthermore, in *Brown* we noted that the statute was legislative recognition of an important public policy. The statute in *Campbell* did not reflect a public interest comparable to the community's interest in protecting injured workers. In this category, the common law rule for at-will employment prevails unless the employee is discharged while pursuing a right related to his role as an employee and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw.

*Walsh* is an example of the third category, that is, where an adequate existing remedy protects the interests of society so that an additional remedy of wrongful discharge will not be accorded.

This case falls within the first category above. The plaintiff was fired for refusing to sign a false and arguably tortious statement. The contents of the statement cast aspersions on the work habits and moral behavior of White. Plaintiff refused to sign the statement because it was false. The words in the written report that White had caused dissension in the workplace because plaintiff refused to respond to her request are arguably defamatory under our caselaw. *See, Walsh v. Consolidated Freightways, supra,* at 355; 3 Restatement Torts 139, § 558 (1938); Prosser, The Law of

Torts § 111 (1971). Defendant required plaintiff knowingly to commit a potentially tortious act or lose his job.

The Oregon Constitution contains two provisions dealing with defamation:

Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; *but every person shall be responsible for the abuse of this right.*" (Emphasis added.)

Article I, section 10, states:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, *and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.*" (Emphasis added.)

These two sections indicate that a member of society has an obligation not to defame others. As in *Nees,* plaintiff here was discharged for fulfilling a societal obligation. We hold that defendant is liable for wrongfully discharging plaintiff because plaintiff refused to sign the potentially defamatory statement.

The final issue in this case deals with the instructions to the jury on punitive damages and defense counsel's exception. The judge instructed the jury:

"Punitive damages are awarded to a plaintiff in addition to general damages in order to discourage the defendant and others from engaging in wanton misconduct. Wanton misconduct is conduct amounting to a deliberate disregard of the rights of others or a reckless indifference to such rights."

The defense attorney responded:

"[DEFENSE ATTORNEY]: The other exception I would have on the — you gave plaintiff's requested instruction No. 12 on punitive damages. My problem with that, a real recent case out of the Supreme Court where the same instruction was given, the Court reversed, said you can't award punitive damages.

"THE COURT: That was on the question of slander. * * * [T]he case you're talking about included slander. There isn't any slander here. They fired him.

"[DEFENSE ATTORNEY]: The problem ----

"THE COURT: Go ahead, take your exceptions.

"[DEFENSE COUNSEL]: Okay, Judge. The only one I had is the plaintiff's No. 13 * * *."

Counsel was probably referring to *Wolf v. Nordstrom*, 291 Or 828, 835, 637 P2d 1280 (1981),[5] in which we held that giving the instruction, which is identical to the one used here, was reversible error because recklessness, by itself, will not support an award of punitive damages. The court was probably referring to *Hall v. The May Dept. Stores*, 292 Or 131, 637 P2d 126 (1981), or *Wheeler v. Green*, 286 Or 99, 593 P2d 777 (1979), in which we held that punitive damages were not allowed in slander cases. At any rate, there was an obvious failure of communication.

■ The purpose of requiring exceptions to instructions is to inform the trial court that the instruction may be erroneous and to give the court an opportunity to make corrections. *Brigham v. Southern Pacific Co.*, 237 Or 120, 390 P2d 669 (1964); *Lilley v. Gifford Phillips, Inc.*, 210 Or 278, 310 P2d 337 (1957).

ORCP 59H. states:

"No statement of issues submitted to the jury pursuant to subsection C.(2) of this rule and no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. *Any point of exception shall be particularly stated and taken down by the reporter* or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

The exception made in this case was not particularly stated. It was counsel's duty to specifically point out to the court that he was not excepting to the issue of punitive damages generally

---

[5] *Wolf v. Nordstrom*, 291 Or 828, 637 P2d 1280 (1981), was decided 10 months before this case was tried.

as in *Green,* but to the wording of the instructions as in *Wolf.* Defense counsel did not adequately preserve error.

Defendant's remaining assignments of error are without merit. The Court of Appeals is reversed.

**CAMPBELL, J.,** dissenting.

I dissent. I would affirm the Court of Appeals. That court reached the right result for the correct reasons.