Submitted on record and petitioner's brief July 1, affirmed July 18, 1977

WIGANT, *Petitioner,*
*v.*
EMPLOYMENT DIVISION et al, *Respondents.*
(No. 77-AB-96, CA 7897)
566 P2d 1202

Marvin S. Nepom, Portland, filed the brief for petitioner.

No appearance for respondent Employment Division.

No appearance for respondent Ponder Burner Co., aka Ponder Burner Company, Inc., a corporation.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

PER CURIAM.

## PER CURIAM.

The single issue to be determined in this appeal is whether the Employment Appeals Board erred in concluding that claimant's conduct constituted "misconduct" within the meaning of the term as used in ORS 657.176(2)(a).[1] We agree with the opinion of the Employment Appeals Board and adopt it:

"[The] Referee * * * set aside an administrators decision to find claimant not disqualified under ORS 657.176(2)(a) as he was discharged, but not for misconduct connected with the work. The employer filed an application for review on December 2, 1976.

"The issue before us is the propriety of the referee's decision. We have reviewed the transcript of the hearing and now enter the following

"FINDINGS OF FACT: (1) [Claimant's employer] does oil-burner service, installation and repair at commercial and industrial firms, their larger accounts being the school district and the Fred Meyer chain. (2) On October 1, 1975, they hired claimant who had had six months' experience as an apprentice, but paid him journeyman wages ($12.00 an hour). (3) Claimant has been going to school nights and has since earned the rating of a journeyman. (4) Throughout most of his employment, there were only two active workers, Mr. Ables and claimant, and they would usually not be working the same job at the same time. (5) Claimant was given the use of a Dodge van at all times as well as credit cards to keep it serviced at company expense, and was sent out to handle jobs on his own for the most part. (6) The employer's services to customers were recognized by employer to be critical to the customer's operations and if

---

[1]    "* * * * *

"(2) If the authorized representative designated by the administrator finds:

"(a) The individual has been discharged for misconduct connected with his work * * *
    "* * * * *

the individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred.
    "* * * * *." ORS 657.176.

[ 209 ]

improperly performed, there existed grave risk of property damage and loss of life. In recognition of this fact, the employer carried $1.5 million in liability insurance. (7) Claimant recognized the danger involved if the services of the boilers involved were not completed as required.

"(8) Claimant, as a journeyman pipefitter, was qualified to perform the services required. (9) He had been specifically instructed as to the service requirements on the boilers involved and carried a check list with him which had been dictated by the employer and which he produced at the hearing * * *. (10) Claimant did not replace electrodes as required. (11) He did not service low water cutout valves as required. (12) He did not service sight glasses as required. (13) Some of the valves the claimant should have serviced were found to be plugged solid and one was found to be frozen, indicating claimant had not serviced the systems as required and set out in the check list. (14) Claimant's failures were intentional and knowing.

"CONCLUSION AND REASONS: We do not agree with the decision of the referee. Claimant was discharged for misconduct in connection with his work.

"Claimant offered a variety of excuses for his inadequate work performance. These varied from claiming inadequate knowledge of the job to claims of great expertise. The latter claim is implicit in claimant's excuse that a number of the electrodes were not replaced because he determined this would simply be a waste of the customer's money (thus he was asserting this change in the face of direct orders to the contrary * * *) on the basis of his own determination of need. Claimant also asserted some of the service was not done because it was too dirty, a clear showing he was acting in a manner of personal convenience and in disregard of his employer's interest. On several occasions, when all else failed, claimant excused his conduct by claiming the employer had countermanded earlier instructions and orders, i.e.; the employer decided not to service the boiler by replacing a frozen valve or the employer decided not to service the company truck or the employer agreed electrodes did not need to be replaced. We do not find these excuses tenable on this record in the face of the employer's testimony to

the contrary. On several occasions, claimant actually recanted testimony on the record * * *.

"This is not simply a case of an individual failing to perform duties through inadvertence, neglect or poor judgment. Claimant, for his own convenience, deliberately disregarded explicit instructions. This was not only a wilful and wanton disregard of his employer's interests, it was also an action that resulted in grave risk of property damage and personal damage to third parties. Claimant's multitude of excuses for his failure only emphasizes the fact that he understood fully the gravity of the situation and his own knowledge that his actions absent excuse were completely improper. We disbelieve claimant's excuses. We find his actions completely improper. A misconduct disqualification is required.

"DECISION: * * * Claimant is disqualified under ORS 657.176(2)(a) by reason of his separation from work."

Affirmed.