Submitted on record and briefs January 17, 1991, affirmed February 12, 1992

# Jindrich H. LANGER,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION
## and Benton County,
*Respondents.*

## (90-AB-516; CA A64721)
826 P2d 6

Jindrich H. Langer, Salem, filed the brief *pro se*.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

Candace A. Haines, Assistant County Counsel, Corvallis, filed the brief for respondent Benton County.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## JOSEPH, C. J.

Claimant seeks review of an Employment Appeals Board (EAB) order denying him unemployment benefits. EAB concluded that he had been discharged for misconduct connected with his work. ORS 657.176(2)(a). He makes a variety of challenges to the Board's findings, its reasoning and its conclusions.

EAB found:

"(1) Claimant began work for Benton County as an assistant district attorney on December 17, 1987. (2) Starting with the first of the year, 1989, claimant began expending all of his accumulated sick leave, personal leave time and vacation due to absences. By mid-April, claimant began accumulating unauthorized absences. (3) Claimant had been very depressed and withdrawn. In mid-April he requested a leave without pay because of what he described as stress. The district attorney gave claimant three weeks leave without pay. Claimant then requested and received a one week extension. (4) Claimant returned on May 16, 1989, and the district attorney noted claimant's performance and mental health seem [*sic*] improved. (5) As claimant progressed into the summer months, the district attorney noted that claimant was acting 'hyperactive' and exhibiting erratic behavior. The district attorney found claimant to be excitable. Claimant talked incessantly, interrupted and behaved in such a manner that the district attorney believed claimant suffered from a manic-depressive illness. (6) In July, 1989, claimant exceeded his authority to divert an assault case in violation of the district attorney's rule (Exh. 3). (7) Claimant believed he acted correctly in violating the rule to divert the assault case. He did not agree with the district attorney's rule. (8) The district attorney had a policy which allowed two members of the local press access to criminal files. (9) Claimant disagreed with this policy. (10) In July, when the district attorney and his chief deputy were away from the office on vacation, claimant restricted access of the press in violation of the policy. The violation of the district attorney's policy caused disruption in the office. (11) On July 31, 1989, the district attorney and the chief deputy returned from vacation. They received complaints from the office staff about claimant's erratic behavior during their absence. (12) On August 7, the district attorney and the chief deputy met with claimant to discuss their concerns and the concerns of the staff about claimant's behavior. During this meeting, claimant objected

to the policy of press access to criminal files. (13) On August 9, 1989, claimant removed some notes, which had been made by the chief deputy, from the desk of the district attorney. The notes had been made during a discussion between the district attorney and the chief deputy about claimant's erratic behavior. (14) Claimant photocopied the notes and returned them to the desk of the district attorney. (15) Benton County has a personnel policy which specifically prohibits anyone but a department head or other employee designated by the Board of Commissioners to look in or on anyone's desk (except their own). (16) On August 10, 1989, claimant telephoned the chief deputy demanding to know who had complained about him and suggesting that two employees be fired. Claimant told the chief deputy that the district attorney was violating the law by allowing the press to have access to files and repeatedly denied that he was paranoid, even though the chief deputy did not suggest paranoia. (17) On August 14, the district attorney and the chief deputy met with claimant. At that meeting, the district attorney ordered claimant to report to a doctor (chosen by the district attorney) for psychiatric examination to determine claimant's fitness to perform the duties as a deputy district attorney. The district attorney limited the examination to that reasonably necessary to evaluate claimant's performance. The examination would be completely paid for by the district attorney's office and a copy of the report would go to claimant. (18) At that meeting, claimant called other employees liars and backstabbers and told the district attorney and the chief deputy that they were violating the law and were stupid about allowing press access to criminal files. Claimant threatened to go to the Oregon State Bar and have the district attorney and the chief deputy suspended. He threatened to go to the news media and discuss all of the problems in the office. (19) The district attorney asked claimant how he became aware of the contents of the notes left on the district attorney's desk. Claimant refused to answer. (20) The district attorney suspended claimant with pay on August 14, pending a determination of claimant's fitness to continue working as a deputy district attorney. (21) The district attorney gave claimant a choice of reporting for a psychiatric examination at 9:00 a.m. on August 15 or 9:00 a.m. on August 16. (22) On August 16, claimant refused to report for the psychiatric examination and offered to be examined by a doctor from another county, chosen by claimant. (23) Sometime around August 16, the district attorney received a call from a defendant's attorney complaining that

claimant had directly contacted a defendant prior to consult-ing with the defendant's attorney of record. The district attorney's rules prohibited such direct contact. The defen-dant told claimant that he was no longer represented by an attorney. (24) A due process hearing was held on September 22, 1989, to determine whether claimant should be termi-nated. (25) The district attorney discharged claimant effec-tive October 2, 1989, for refusing the psychiatric examin-ation and for violating the district attorney's established office policies (*see* Exh. 4).''

After discussing the statute involved, ORS 657. 176(2)(a), and the administrative rule, OAR 471-30-038(3), EAB concluded:

"Claimant was absent between January and May 16, 1989, to the extent that he used all leave time and had to take four weeks of unpaid leave. Claimant had been very depressed and withdrawn and thought that stress caused problems which resulted in his absence. When claimant returned to work on May 16, 1989, he appeared to the district attorney to have improved. However, as time progressed, claimant became hyperactive and exhibited erratic behavior. The district attorney believed claimant suffered from a manic-depressive illness. We find that claimant's erratic behavior justified the district attorney's order for claimant to undergo psychiatric examination. The district attorney's office agreed to pay for the examination and see that the examination was limited to the question of claimant being able to continue to perform his work and that claimant would receive a copy of the report. Claimant refused to undergo the examination. Instead, he offered to be examined by a doctor from another county chosen by claimant. Since the district attorney's office would pay for the examination, the examination would be limited to the question of whether claimant could continue as a deputy district attorney and because claimant would be given a copy of the report, the district attorney was justified in insisting claimant be examined by a doctor chosen by the district attorney. In light of all the attendant circumstances, claim-ant's refusal to comply with the order of the district attorney constituted a deliberate violation of the standards of behav-ior the district attorney had the right to expect.

"We are not persuaded, given all of the other factors present at the time, that the district attorney discharged claimant in retaliation against claimant's complaints. The district attor-ney had valid reasons for suspending and ultimately firing claimant.''

EAB also concluded that claimant's refusal to undergo the psychiatric evaluation was misconduct and not merely an isolated instance of poor judgment.

Claimant first argues that the record supports a conclusion that his discharge was in retaliation for his filing a complaint with the Oregon State Bar Association against the district attorney and his chief deputy. The bar complaint was based on claimant's view that allowing media representatives to look at the district attorney's files is a violation of law and professional ethics. On this issue, claimant simply reargues the evidence and disputes EAB's inferences from it. EAB's findings are supported by substantial evidence, and there is adequate reasoning to support its conclusion that claimant did not prove that the discharge was retaliatory.

Claimant contends that several of the findings are not supported by substantial evidence. Some of the findings that he identifies have little or no relevance to the conclusions that EAB drew, and it is unnecessary to address them. As to the other findings, his principal dispute is again with the inferences that EAB drew from the evidence. We conclude that the material findings are supported by substantial evidence.

■ The major issue is whether claimant's refusal to participate in the examination by the psychologist selected by the district attorney was misconduct connected with his work. Claimant's position before EAB was that there was no basis for the district attorney to order the examination, so it was an unreasonable order that he was privileged to disobey. *See Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975); *Redman Homes, Inc. v. Employment Div.*, 97 Or App 653, 777 P2d 414 (1989). He did not assert that the district attorney lacked authority to issue the order; only that there was no reasonable basis for him to issue it. EAB concluded that, because of claimant's erratic behavior and his recent history of stress related absences, the district attorney was justified in ordering him to have the examination "limited to the question of whether claimant could continue as a deputy district attorney." Claimant's general attack on the propriety of the order does not provide any basis on which to reverse EAB's conclusion.

■     Claimant next argues that, even if the order was appropriate and reasonable, his disobedience was justified. A claimant's refusal to obey a reasonable order of an employer can be disqualifying misconduct under ORS 657.176(2)(a), *see Wigant v. Employment Division*, 30 Or App 207, 566 P2d 1202 (1977), but, if a claimant had a reasonable basis for disobeying the order, he might not be guilty of misconduct. *Whitacre v. Employment Div.*, 102 Or App 229, 793 P2d 1390 (1990); *Johnson v. Employment Division*, 56 Or App 454, 642 P2d 329, *rev den* 293 Or 235 (1982); *Bremer v. Employment Division*, 52 Or App 293, 628 P2d 426 (1981).

■     Claimant argues, first, that he was justified in disobeying the order to take the examination, because the doctor selected by the district attorney was biased. His only basis for that contention is that the designated psychologist had testified on behalf of the state in a number of cases. EAB concluded that the district attorney was justified in insisting that claimant be examined by the doctor chosen by the district attorney. That conclusion is supported by the evidence.

■■     Claimant next argues:

"[He] was willing to accommodate employer's legitimate needs, if any, by less intrusive means. He considered [*sic*] to be examined by Dr. Weimer, if the doctor's opinion released to employer would have been limited to the statement whether claimant was capable of performing his work. The district attorney, however, demanded the whole report of an estimated five-hour examination. Such a comprehensive examination and a report, even though allegedly limited to the questions of claimant's work capability, necessarily would have included evaluation of claimant's related and unrelated medical history, his personality, habits, personal relationships and other intimate facts of his private life. Employer had no legitimate interest in acquiring and disseminating private information of that type."

The essence of his argument is that he refused the examination out of concern for his privacy right to withhold intimate information, not from the doctor, but from the district attorney and anyone else who might have access to his personnel file. He contends that he received no assurance that the report would not contain extensive private information or that it would be kept confidential. Although the record contains very little evidence about what the report would contain

or how widely it could be disseminated, claimant expressed his fears about those problems and testified that the fears were not allayed by the district attorney. EAB found that the examination "was limited to the question of claimant being able to continue to perform his work." That finding answers claimant's concern about how extensive the report might be but may not avoid his contention that it might contain private information that might get disclosed, inadvertently or otherwise, as part of his personnel file. He contends that, because he is an attorney who practices in Oregon, dissemination of private and intimate details of his life would adversely effect him professionally.

We have recognized that an employee may weigh personal interests, such as mental or physical health, against the employer's interest in having an order obeyed. *See Whitacre v. Employment Div., supra; Johnson v. Employment Division, supra.* If the employee chooses personal interests over those of the employer, EAB must examine the choice and its basis to determine whether it exhibits a "wilful disregard of * * * employer's interest." OAR 471-30-038(3). The mere fact that a claimant disobeyed an order may not always be sufficient to support a conclusion adverse to the claimant. However, EAB did not base its ultimate conclusion on that single fact. Instead, it found that claimant's refusal to undergo the psychiatric examination "and his deliberate violation of policies of the district attorney's office in Benton County exhibit a pattern of insubordination which we find was not isolated." There is substantial evidence and adequate reasoning to support EAB's holding that "claimant behaved in deliberate violation of the standards of behavior [that] the employer had the right to expect."

Affirmed.