Argued and submitted February 24, 2000, reversed and remanded
February 14, 2001

Frederick C. DYMOCK, Jr.,
*Appellant,*

*v.*

NORWEST SAFETY PROTECTIVE EQUIPMENT
FOR OREGON INDUSTRY, INC.,
an Oregon corporation,
*Respondent.*

(16-98-18369; CA A105112)

19 P3d 934

David Jensen argued the cause for appellant. With him on the briefs was Jensen, Elmore & Stupasky, P.C.

Terrence J. Hammons argued the cause for respondent. With him on the brief was Hammons & Mills.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice*, De Muniz, P. J., resigned.

## HASELTON, P. J.

Plaintiff appeals from a judgment dismissing his complaint for failure to state ultimate facts sufficient to constitute a claim for wrongful discharge. ORCP 21 A(8). The issue is whether plaintiff, fired for refusing to sign a noncompetition agreement, has stated a claim for wrongful discharge against his former employer. For the reasons set forth below, we reverse and remand.

In reviewing a judgment of dismissal, we consider only the facts alleged in the complaint. Well pleaded allegations, and reasonable inferences that can be drawn from those allegations, are accepted as true. "A pleading that contains an allegation of material fact as to each element of the claim for relief, even if vague, is sufficient to survive a motion to dismiss." *McAlpine v. Multnomah County*, 131 Or App 136, 138, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995).

Plaintiff's complaint alleges that in March 1998, after 17 years of employment, defendant ordered him to sign an agreement. Paragraph two of the agreement states:

"Nonsolicitation. Employee agrees, during the term of employment and for a period of five years thereafter, that he/she shall not:

"2.1    Solicit the business of any business entity which was a customer of Company at any time during Employee's employment, or where such entity was a target of Company's marketing; and

"2.2    Offer employment to any employee or employees of Company who were employees at any time during Employee's employment with the Company."

Plaintiff further alleges that employer's order to sign the agreement did not occur upon plaintiff's initial employment, nor did it occur in connection with a *bona fide* advancement in plaintiff's employment. Finally, plaintiff alleges that he was fired for refusing to sign the agreement and suffered economic and emotional harm as a result.

Defendant moved to dismiss plaintiff's complaint on the ground that the agreement in question was not a "noncompetition agreement" for purposes of ORS 653.295(1). That statute provides:

"A noncompetition agreement entered into between an employer and employee is void and shall not be enforced by any court in this state unless the agreement is entered into upon the:

"(a) Initial employment of the employee with the employer; or

"(b) Subsequent bona fide advancement of the employee with the employer."[1]

Defendant also argued that, even if the agreement is a "noncompetition agreement" within the meaning of ORS 653.295, discharging an employee for refusing to sign such an agreement does not fall within the recognized exceptions to the at-will employment doctrine. Finally, defendant asserts that a common-law wrongful discharge remedy is unnecessary because plaintiff is adequately protected by an existing statutory remedy. The trial court dismissed plaintiff's claim on the ground that the agreement was not a "noncompetition agreement" within the meaning of ORS 653.295.

On appeal, plaintiff assigns error to the court's ruling, arguing that an agreement that hinders the ability to compete equally in an open marketplace is a "noncompetition agreement." Defendant counters that the agreement is not a noncompetition agreement because it would not have prohibited plaintiff from engaging in the same business as employer. Instead, it would have prohibited plaintiff only from soliciting defendant's customers, entities that defendant had targeted for marketing, or defendant's employees. Defendant also argues that the trial court's dismissal was correct in any event because discharging an employee for refusing to sign such an agreement cannot, as a matter of law, constitutes wrongful discharge.

---

[1] ORS 653.295(2) through (5) provide exceptions that are inapplicable to the present circumstances. ORS 653.295(6) provides definitions of terms used in ORS 653.295(1), and is discussed in the text below.

■    We first turn to the question whether the agreement is a "noncompetition agreement" within the meaning of ORS 653.295. "Noncompetition agreement" is defined in ORS 653.295(6) as:

> "[A]n agreement, written or oral, express or implied, between an employer and employee under which the employee agrees that the employee, either alone or as an employee of another person, shall not compete with the employer in providing products, processes or services, that are similar to the employer's products, processes or services for a period of time or within a specified geographic area after termination of employment."

Here, the disputed agreement is in writing, it is between an employer and an employee, and it purports to last for five years after termination. The remaining question is whether an agreement not to solicit business from any entity that was a customer of defendant or from any entity that is targeted for marketing by defendant, and not to offer employment to anyone who worked for defendant, constitutes an agreement not to "compete * * * in providing products, processes or services, that are similar to [defendant's]." Resolving that question requires us to interpret "compete."

■■    Interpretation of statutory language begins with the plain, natural, and ordinary meaning of the text. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Equally important is the context, which includes "other provisions of the same statute and related statutes, prior enactments and prior judicial interpretations of those and related statutes[.]" *Young v. State of Oregon*, 161 Or App 32, 35-36, 983 P2d 1044, *rev den* 329 Or 447 (1999) (citations omitted). We consider legislative history only if the intended meaning is not clearly expressed by the text and context of the statute. *Id.*

To "compete" means "to seek or strive for something (as a position, possession, reward) for which others are also contending: vie with another or others for or as if for a prize." *Webster's Third New Int'l Dictionary*, 463 (unabridged ed 1993). Plaintiff asserts that the agreement here prohibits competition within the plain meaning of that term. The thrust of defendant's response, as we understand it, is that

an agreement must *completely* prohibit an employee from engaging in the same business as employer to be considered a "noncompetition agreement"—and that the agreement at issue here, while precluding plaintiff from soliciting business from customers with whom defendant had done business or sought to do business, nevertheless would have allowed plaintiff to engage in the same business, albeit subject to those limitations.

The definition of "compete" quoted above is a broad definition. Similarly, Oregon courts have broadly interpreted "competition" in the context of noncompetition agreements in the past. *See, e.g., Farmers Insurance Exchange v. Fraley*, 80 Or App 117, 119, 720 P2d 770 (1986) (an agreement not to "directly solicit, accept, or service the insurance business of any policy holder of record" deemed to be "noncompetition agreement" but held to be reasonable contract in restraint of trade); *Bennett v. Les Schwab Tire Centers*, 48 Or App 909, 913, 618 P2d 455 (1980) (provision for forfeiture of earned profit-sharing bonuses in the event that an employee engaged in a tire business within a limited geographical area characterized as a noncompetition agreement). Most recently, in *Tifft v. Stevens*, 162 Or App 62, 68-69, 987 P2d 1 (1999), we treated a "nonsolicitation" provision as one of "several noncompetition clauses" in an agreement. In each of those instances, the noncompetition agreement, while not absolutely precluding the employee from subsequently engaging in the same business as the employer, materially deterred or impaired the employee from doing so.

On the facts alleged, the same is true here. Under the proffered agreement, plaintiff not only could not solicit customers with whom defendant had already done business, but also could not solicit the business of any "entity that was a target of [defendant's] marketing." That restraint was to continue for five years. Thus, the agreement at issue here falls squarely within the common meaning of "noncompetition agreement" as that term is employed in ORS 653.295(6) and in Oregon law generally. Accordingly, it was error for the trial court to dismiss plaintiff's complaint on the ground that the tendered agreement is not a noncompetition agreement within the meaning of ORS 653.295.

■■ Defendant urges us, nevertheless, to affirm the trial court's judgment of dismissal on the alternative ground that, even if the agreement is a "noncompetition agreement," plaintiff's claim is not cognizable under any theory of wrongful discharge recognized in Oregon. In *Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or App 371, 376, 879 P2d 1288 (1994), we summarized the types of wrongful discharge claims generally recognized under Oregon law:

> "In general, an employer may discharge an employee at any time, for any reason, unless doing so violates a contractual, statutory or constitutional requirement. *Patton v. J.C. Penney Co.*, 301 Or 117, 120, 719 P2d 854 (1986). There are exceptions to the general rule. A cause of action will lie against an employer who discharges an employee for performing a public duty, or fulfilling a societal obligation such as serving on a jury, *Nees v. Hocks*, 272 Or 210, 219, 536 P2d 512 (1975), or refusing to commit a potentially tortious act of defamation, *Delaney v. Taco Time Int'l.*, 297 Or 10, 17, 681 P2d 114 (1984). An employer also may be held liable for discharging an employee for pursuing private statutory rights that are directly related to the employment, such as resisting sexual harassment by a supervisor, *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90-97, 689 P2d 1292 (1984), or filing a claim for workers' compensation benefits, *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978)."

Whether a common-law remedy is available is further conditioned upon the absence of adequate statutory remedies: "[W]here an adequate existing remedy protects the interests of society * * * an additional remedy of wrongful discharge will not be accorded." *Delaney*, 297 Or at 16; *Walsh v. Consolidated Freightways*, 278 Or 347, 563 P2d 1205 (1977). Thus, the availability of an adequate statutory remedy precludes an otherwise sufficient common-law wrongful discharge claim. *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90-97, 689 P2d 1292 (1984); *Farrimond v. Louisiana-Pacific Corp.*, 103 Or App 563, 566, 798 P2d 697 (1990).

Here, plaintiff argues that he was discharged for his invocation of an important employment-related statutory right. *See, e.g., Holien*, 298 Or at 90-97; *Brown,* 284 Or at 604. He contends that ORS 653.295 confers an employment-related right—the right not to be subjected to noncompetition

agreements that are unsupported by the requisite consideration. Although plaintiff's complaint does not refer to ORS 653.295 explicitly, it does specifically allege that the conditions set out in that statute for making a noncompetition agreement enforceable were not met. *See Sheets v. Knight,* 308 Or 220, 232, 779 P2d 1000 (1989) (complaint should not be dismissed if it pleads a claim for relief under any theory).

ORS 653.295 confers and describes an employment-related right. It regulates agreements between employers and employees that are entered into during the course of a continuing employment relationship and that purport to limit the employee's ability to engage in related work at a future date. *Compare Campbell v. Ford Industries, Inc.,* 274 Or 243, 250-52, 546 P2d 141 (1976) (employee failed to state a claim because his statutory right, as a stockholder, to inspect corporate records is a private right, unrelated to employment). Employees' susceptibility to coercion in that context is manifest. *See Pacific Veterinary Hospital v. White,* 72 Or App 533, 537-38, 696 P2d 570 (1985) (legislature, in enacting ORS 653.295, intended to protect employees from "surprise and oppressive tactics").

Finally, we consider defendant's argument that plaintiff failed to state a claim for wrongful discharge because ORS 653.295 provides a sufficient statutory remedy by making noncompetition agreements that do not comport with the statute unenforceable. ORS 653.295, however, provides no remedy for *discharge* of an employee; it provides a potential remedy only for employees who actually sign a noncompetition agreement that do not comport with the statute by making such agreements unenforceable. It provides no protection whatsoever for employees who resist employers' "surprise and oppressive tactics" and refuse to sign such agreements. *Pacific Veterinary Hospital,* 72 Or App at 537. *Compare Walsh,* 278 Or at 352 (there was no common-law wrongful discharge cause of action where federal remedy for discharge included "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay") *with Brown,* 284 Or at 611-12 (there was a common-law wrongful discharge cause of action where only limited administrative remedies were available for discharge).

The trial court erred in granting defendant's motion to dismiss plaintiff's claim for wrongful discharge.

Reversed and remanded.