**FIRST ALLMERICA FINANCIAL LIFE INSURANCE COMPANY, Allmerica Financial Life Insurance an Annuity Company, and Allmerica Investments, Inc., Plaintiffs,**

v.

**Calvin S. SUMNER, Harold D. West, and Metropolitan Life Insurance Company, Defendants.**

No. CIV.01–0034–HU.

United States District Court,
D. Oregon.

Feb. 21, 2002.

Christopher T. Carson, Kilmer, Voorhees & Laurick, Attorneys at Law, Portland, OR, Steven L. Manchel, Manchel, Maloney & Brennan, P.C., Newton, MA, for Plaintiffs.

Martin Harris, Rachel B. Cowen, Connelly Sheehan Moran, Chicago, IL, Per A. Ramfjord, Stoel Rives LLP, Portland, OR, for Defendants.

## OPINION AND ORDER

KING, District Judge.

Plaintiffs are insurance and financial services companies that filed this action against two former employees and their new employer alleging that the former employees took confidential business information, including client lists and customer profile information, in violation of express contractual obligations, common law fiduciary duties and Oregon law. Plaintiffs also claim that defendants have been actively soliciting other employees to transfer employment to defendant Metropolitan Life Insurance Company (Met Life). Plaintiffs assert that as Managers and Supervisors, the individual defendants had access to confidential client profile material that was not generally available to other agents. Plaintiffs assert seven claims for relief: (1) breach of contract against Sumner and West; (2) conversion of business records against all defendants; (3) misappropriation of trade secrets in violation of O.R.S. 646.461 against all defendants; (4) breach of fiduciary duties against Sumner and West; (5) tortious interference with contractual and business relationships against all defendants; (6) unfair competition; and (7) constructive trust.

Plaintiffs have filed a motion for a preliminary injunction that would direct defendants to return all confidential and business materials, to stop contacting and soliciting former clients and to preclude defendants from soliciting other employees of the plaintiffs.

Prior to the hearing on that motion, defendant Met Life filed a motion for partial summary judgment to dismiss all claims that rely upon noncompetition agreements signed by individual defendants Calvin S. Sumner and Harold D. West. Defendants Sumner and West filed a limited joinder in Met Life's motion; they seek a determination that the restrictive covenants included within their employment contracts are invalid; however, they reserve the right to seek specific enforcement of arbitration clauses included within their agreements.

Defendants claim that the agreements entered into between plaintiffs and West and Sumner are void under O.R.S. 653.295, because they were not executed at the inception of employment or upon a "bona fide advancement."[1] Plaintiffs agree that

---

**1.** For the purposes of this motion, there is no dispute that the restrictive covenants involved are reasonable in geographic and temporal scope. The contracts prohibit the individual defendants from soliciting plaintiffs' policy

the employment agreements at issue were not executed at the inception of the individual defendants' employment. Plaintiffs counter that the employment agreements signed by West and Sumner are not "non-competition" agreements subject to the Oregon statute at all, and, even if they are, they were executed upon the individual defendants' bona fide advancement.

Resolution of this issue presents a question of law regarding the proper construction of the phrase "bona fide advancement" as that term is used in O.R.S. 653.295. The parties have not cited, nor has the court been able to find any authority directly on point. This case raises a question of first impression regarding the scope and construction of this statute as applied to non-competition agreements. For the reasons which follow, I find that the disputed contracts constitute non-competition agreements subject to the limitations imposed by the Oregon legislature on such agreements in the employment setting. I further find that the term "bona fide advancement" necessarily requires some alteration in the employee's job status or duties performed beyond a raise, an improved benefit package or some other form of additional compensation or consideration.

## STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial, and thus there can be "no genuine issue as to any material fact." *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Co. of North America,* 638 F.2d 136, 140 (9th Cir.1981).

## DISCUSSION

Noncompetition agreements between employers and employees in Oregon are governed by O.R.S. 653.295 which provides in pertinent part as follows:

"(1) A noncompetition agreement entered into between an employer and employee is void and shall not be enforced by any court in this state unless the agreement is entered into upon the:

(a) Initial employment of the employee with the employer; or

(b) Subsequent advancement of the employee with the employer."

The statute defines "noncompetition agreement" as follows:

"an agreement, written or oral, express or implied, between an employer and employee under which the employee agrees that the employee, either alone or as an employee of another person, shall not compete with the employer in providing products, processes or ser-

---

holders and employees for a two year period. There is also no dispute that the individual defendants had access to confidential client information and that they held positions of

the type that involved significant responsibility such that their employer has a reasonable basis for seeking to enforce such a contractual provisions.

vices, that are similar to the employer's products, processes or services for a period of time or within a specified geographic area after termination of employment." O.R.S. 653.295(3)(c).

 Oregon courts have held that in interpreting an Oregon statute, the court should attempt to "discern the intent of the legislature." *Carlson v. Myers,* 327 Or. 213, 223, 959 P.2d 31 (1998). The starting point for interpreting the statute is its text and context. *PGE v. Bureau of Labor and Industries,* 317 Or. 606, 610–611, 859 P.2d 1143 (1993). Words of common usage should be given their "plain, natural and ordinary meaning." *Id.* at 611, 859 P.2d 1143. "Context" requires an examination of earlier versions of the same statute. *Carlson,* 327 Or. at 223, 959 P.2d 31; *Krieger v. Just,* 319 Or. 328, 336, 876 P.2d 754 (1994).

The contracts at issue in this case include two provisions that seek to restrict the activities of the individual defendants beyond the term of their employment. With the first restriction, West and Sumner agree that they will not "directly or indirectly induce or attempt to induce any agent or employee of the Insurance Companies to terminate their relationship with the Insurance Companies." The contracts also prohibit the individual defendants from directly or indirectly attempting to "induce any policyholder of the Insurance companies to terminate or replace any policy issued by either Insurance Company."

a. *Are the Contracts at Issue Non–Competition Agreements?*

In *Dymock v. Norwest Safety Protective Equipment for Oregon Industry, Inc.,* 172 Or.App. 399, 19 P.3d 934, *rev. allowed,* 332 Or. 326, 28 P.3d 1176 (2001), an employee filed a wrongful discharge claim arguing that he was terminated for refusing to sign a noncompetition agreement in violation of O.R.S. 653.259, since he was asked to sign

the agreement 17 years after his initial employment and not in connection with any bona fide advancement. The trial court dismissed the claim, finding that the proposed contractual restriction on soliciting business and inducing other employees to leave the company did not constitute a "noncompetition" contract because it would not have prevented the plaintiff from engaging in the same business as his former employer. *Id.* at 401–402, 19 P.3d 934.

The Court of Appeals reversed, holding that the term "compete" should be broadly construed. The court specifically held that the prohibition on soliciting any of the defendant's customers or targeted customers fell "squarely" within the meaning of O.R.S. 653.295 and thus, the dismissal was improper. The court did not separately address the clause prohibiting the solicitation of former employees; instead, the court appears to have held that the entire agreement constituted a noncompetition contract subject to the statute. There is no indication that any of the parties raised a question regarding the severability of the clauses or the application of O.R.S. 653.295 to separate portions of the same contract.

 The contractual clauses at issue in this case which seek to prohibit the individual defendants from inducing policy holders to terminate or replace policies issued by the plaintiffs falls squarely within the definition of a noncompetition agreement as recognized by the court in *Dymock.* Plaintiffs' attempt to draw a distinction between a prohibition against solicitation of former employees and a prohibition against inducing customers to terminate their relationship with the plaintiffs is misplaced given the Oregon court's broad construction of the statutory reach of O.R.S. 653.295.

While the prohibition against solicitation of former employees presents a closer

question, such a restriction also falls within the broad reach of the statute given the legislature's intent to strictly limit an employer's ability to place restraints on former employees. Such a covenant acts to restrain competition among employers for talented sales agents and, as such, it affects competition in a manner similar to a restriction against soliciting former customers.

Based upon the foregoing, I find that the contractual provisions in West and Sumner's employment agreements that seek to restrain their ability to solicit former customers or to induce former co-workers to change employers fall within the definition of a noncompetition agreement within the meaning of the Oregon statute, O.R.S. 653.295.

### b. *Was there a "Bona Fide Advancement?"*

The Oregon statute does not define "bona fide advancement." The parties have not cited, nor have I been able to find any case directly construing this phrase. In *Pacific Veterinary Hospital, P.C. v. White,* 72 Or.App. 533, 696 P.2d 570 (1985), the court invalidated a non-competition agreement executed several months after the plaintiff began working for the defendant. However, the court applied an earlier version of O.R.S. 653.295 that did not include the "bona fide advancement" language; the prior version of the statute prohibited all noncompetition agreements in the employment setting, save those that were executed upon the employee's initial employment. In a footnote, the court acknowledged the 1983 statutory amendment adding the "bona fide advancement" provision and noted that this change was intended to permit noncompetition agreements when an employee is "promoted." However, the scope and construction of the "bona fide advancement" provision was not an issue on appeal and the court's reference to the amendment's intent to include promotions was dicta.

The dictionary defines "advancement" as "an improvement, development: progress" or a "promotion, as in rank." *Webster's New Riverside University Dictionary* (1984), p. 80.

An examination of the legislative history of O.R.S. 653.295 is helpful and revealing. In *Pacific Veterinary Hospital,* the court noted that the original version of O.R.S. 653.295 "was phrased originally to invalidate any noncompetition agreement between an employer and an employe (sic)." 72 Or.App. 533, 537, 696 P.2d 570. The court noted that the legislature viewed all such agreements with suspicion as contrary to public policy. *Id.* After hearing concerns from business interests about protecting against former employees taking unfair advantage, the statute enacted in 1977 prohibited all noncompetition agreements in the employment setting save those that were entered into upon the employees' initial hiring. *Id.* The court noted that this limitation was imposed "to protect employes (sic) from surprise and oppressive tactics." *Id.* at 538, 696 P.2d 570.

The 1983 amendment to O.R.S. 653.295 added the provision allowing noncompetition agreements upon an employee's "bona fide advancement." The Senate Committee on Business and Consumer Affairs Hearing Notes explain that the change was designed to address the "undesirable" result that would hinder employers from promoting employees within their own ranks. The "principal argument" advanced in favor of the amendment was explained as follows:

"The bill removes the problems which have resulted from ORS 653.295. The employer still could not surprise the old employee with a new requirement, but the employer could impose the noncom-

petition agreement as a condition of advancing to a higher position in which there is a real need and justification for a noncompete obligation." (Testimony before Senate Committee, May 9, 1983, p. 5–6).[2]

Defendant Calvin Sumner was a General Agent and Branch Manager for the plaintiffs' Portland agency from 1981 until he resigned effective January 2, 2002. Defendant Harold West was hired in 1993 as a co-General Agent and Supervisor for the Portland agency until he too resigned on January 2, 2002.

On January 1, 1996, West and Sumner signed revised employment contracts with Allmerica. These contracts altered their compensation system and provided for a severance benefits package. There is no dispute that West and Sumner's job duties did not change in 1996; there is also no claim that the contracts were signed under duress or that the individual defendants were told that they had to sign the agreements in order to maintain their employment. Further, there is no dispute that the agreements were supported by consideration.

There is nothing in the record relative to any contract or agreement that Sumner may have signed when he first became employed by the plaintiffs in 1981. However, when West was hired in 1993, he signed an employment agreement that included the same restrictive covenants relative to the non-solicitation of former customers and the agreement not to induce former employees to leave.

Considering the plain language of the statute, I find that both parties have presented equally plausible readings of the phrase "bona fide advancement." There is no present dispute that the contracts signed in 1996 generally worked to the employees' advantage in terms of their compensation.[3] The restrictive covenants were supported by consideration in the form of a severance package and a favorable compensation formula. Thus, it could be argued that the 1996 agreements represented some progress within the broadest sense of the word "advancement."

By contrast, defendants' proposed construction of the plain text of the statute is also supported since it would require some form of promotion or progression in job duties.

■ Turning to the legislative history, the prior versions of the statute lend support to a narrow construction of the term "bona fide advancement." The first proposed bill would have banned noncompetition agreements outright; to accommodate business interests, the 1977 version that was passed permitted such agreements, but only upon the inception of employment. The Senate Hearings reveal that the 1983 amendment was passed solely to prevent the unanticipated consequence of the 1977 version; that of the deterrent

---

**2.** *See also* Testimony at pages 11–12 (explaining that Legislature sought to prevent employers from "surprising" an old employee with new terms except where the employee "may become a person whose competition would be unfair" ... or where the employee is "advanced into a position .... If the employee doesn't want to sign it he doesn't have to, but he doesn't have to get the promotion.").

**3.** Defendant Met Life has argued, without explanation, that West was formally "demoted" in 1997 and that Sumner and West were both "effectively demoted" in mid–2001 and, thus, there was no "true" consideration. Defendants West and Sumner argue that the contracts are not supported by consideration because the severance packages were nonbinding on plaintiffs and could be revoked at any time. West and Sumner also contend that the compensation changes reflected in the 1996 agreements were actually put into effect in 1995. Solely for the purposes of this motion, I have assumed, without deciding, that the 1996 agreements were supported by valid consideration.

effect employers felt in promoting from within. Thus, the amendment was designed to encourage employers to promote from within their own ranks. The use of the descriptive phrase "bona fide" further suggests that the promotion be substantive. Further, the legislative history specifically contemplates an actual change in job status or responsibilities justifying the imposition of a noncompetition restriction. Thus, an employer who hires an employee and assigns that employee to perform tasks that involve client contacts and access to other employees' sales records must impose any restrictive covenants at the outset of that employee's hiring or forfeit such rights. What the legislature sought to preclude was a change in restrictions mid-stream in an employee's tenure. The focus of the legislative change was upon the employee's job duties, not upon the consideration otherwise proffered by the employer.

Based upon the text of O.R.S. 653.295 and the context provided by the legislative history for that statute, I find that a "bona fide advancement" necessarily requires an increase or improvement in job status or responsibilities that justifies a change in the way the employer entrusts client contacts and business related information with the employee. Simply offering the employee more money, a more favorable compensation package or certain benefits is insufficient to constitute a bona fide advancement, absent some proof of a change in actual job status or responsibilities. Because there is no factual dispute that the individual defendants' job status and duties did not change with the execution of the 1996 contracts, there was no bona fide advancement to justify imposition of the restrictive covenants. Further, because there is no factual dispute that both Sumner and West commenced employment with the plaintiffs long before the 1996 contracts were executed, there is no savings under the inception provision of O.R.S. 653.295 either. Because these restrictive covenants fail to comply with the statute, they are unenforceable as a matter of law. *See e.g. IKON Office Solutions, Inc. v. American Office Products, Inc.*, 178 F.Supp.2d 1154, 1160 (D.Or.2001) (finding noncompetition agreement executed 17 days after employee commenced work void as a matter of law).

As to defendant West, plaintiffs have clarified that they do not seek to enforce the restrictive covenants West agreed to in his 1993 employment contract. However, plaintiffs argue that the fact that West agreed to such restrictions at the inception of his employment should factor favorably in considering the viability of the 1996 restrictive covenants. However, absent a bona fide advancement to accompany the 1996 restrictions, plaintiffs offer no authority for the proposition that such equitable considerations should save an otherwise invalid noncompetition agreement. Section 29 of West's 1996 contract provided as follows: "This agreement contains the entire contract between the parties. It is hereby understood and agreed that any other agreement or representation, commitment, promise or statement of any nature, whether oral or written, relating to or purporting to relate to the relationship of the parties is hereby rendered null and void." There is no provision included within the 1996 agreement that would invoke any of the prior terms of the 1993 agreement; there is no reference to the 1993 agreement and no specific reference to any prior noncompetition agreement with West. Thus, by the plain terms of the parties' agreement, the 1993 contract no longer exists and may not be relied upon to enforce any of its terms.[4]

---

4. The court's holding in *Pacific Vet* provides inferential support for the proposition that a

prior contractual non-competition agreement does not act to salvage a later, invalid con-

Finally, the parties agree that the invalid noncompetition clauses are severable from the remainder of the agreement so that the remaining portions of the 1996 contracts may be enforced. *See Hagen v. O'Connell, Goyak & Ball, P.C.*, 68 Or.App. 700, 703, 683 P.2d 563 (1984) (holding that otherwise valid buy-sell agreement could be enforced after noncompetition penalty held contrary to public policy severed from contract).

## CONCLUSION

Based upon the foregoing, I find that the restrictive covenants included within the individual defendants' employment contracts constitute noncompetition agreements. I further find that because these restrictive covenants were not executed at the inception of the individual defendants' employment nor as part of a bona fide advancement, they are unenforceable as a matter of law. Accordingly, defendants' motion for partial summary judgment (# 36) is GRANTED.

IT IS SO ORDERED.

tract. There, the fact that the former employee had initially agreed to a restrictive covenant not to compete within a certain geographic area for a two year period was of no moment since the contract was later renegotiated and superseded the earlier agreement. As in *Pacific Vet,* plaintiffs here seek to enforce a 1996 contract that expressly nullified any and all prior agreements. Thus, the fact that West had previously agreed to the same restrictive covenants at the inception of his employment (a fact disputed by West), does not alter the analysis.